JUNEAL PRATT, APPELLANT, V. HAROLD CLARKE ET AL., APPELLEES.
590 N.W. 2d 426

Filed March 16, 1999.   No. A-97-1267.

200

Juneal D. Pratt, pro se.

Don Stenberg, Attorney General, and Terri M. Weeks for appellees.

MUES, INBODY, and CARLSON, Judges.

CARLSON, Judge.

Juneal Pratt, an inmate at the Lincoln Correctional Center (LCC), appeals an order dated November 7, 1997, from the district court for Lancaster County sustaining the demurrer of Harold Clarke, Michael Durst, and Mark Horton (defendants) to a petition filed by Pratt on May 28. For the reasons set forth below, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

On May 28, 1997, Pratt filed a petition pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 (1994 & Supp. II 1996) and Neb. Rev. Stat. §§ 20-148 (Reissue 1997) and 83-954 (Reissue 1994) against the defendants in their individual and official capacities for conspiring to deprive him of his 8th and 14th Amendment rights protected under the U.S. Constitution. Clarke is the director of the Department of Correctional Services, Durst was the then State Fire Marshal, and Horton was the then director of the Department of Health.

In Pratt's petition, he alleged that the defendants had violated his Eighth Amendment rights by subjecting him to a dangerous, overcrowded, and illegally constructed facility in direct violation of § 83-954 and the Enabling Act of Congress. Specifically, Pratt cited § 83-954, which states that "[t]he correctional facility to be located in Lancaster County may be built at the present site of the men's reformatory in Lincoln, Nebraska, and shall be designed to house two hundred persons. The ancillary services shall be designed to provide for future expansion to serve an additional fifty persons." Pratt contends that LCC was constructed to exceed the standards set forth in the statute and that fire, health, and safety standards were approved when inmates each had their own cell, which is no longer the case.

Additionally, Pratt alleged that the defendants violated his constitutional rights by intentionally and deliberately causing

him to be subjected to a high risk of danger to his physical and emotional welfare, resulting from the defendants' deliberate indifference to his health and safety. Specifically, Pratt stated that there is no way other than beating and kicking on the doors to alert staff to dangers and that the cells lack smoke detectors, sprinklers, and smoke exhaust systems. Pratt also alleged that the defendants had violated his rights by subjecting him to hazardous conditions, consisting of breathing smoke and dirt through LCC's allegedly faulty ventilation system. In support of his petition, Pratt attached three newspaper articles to his petition regarding the conditions at LCC.

Pratt alleged that he has been diagnosed with high blood pressure, that each year his medication has increased, and that he is now "under the maximum allowed." Pratt also stated that he had a "lung function test" and that the "results were low pressure." Pratt alleged that the defendants' actions demonstrate that LCC could not function without the conspired efforts of the defendants' to conceal and/or cover up the dangers, deficiencies, and the illegal construction of the facility and that LCC is a facility with obvious fire and health dangers.

Pratt requested that the district court issue an order against each defendant in his individual and official capacity for the deliberate indifference to Pratt's health and safety, as well as to protect him from cruel and unusual punishment. Pratt sought an injunction directing the defendants to (1) bring the number of inmates down to the design capacity, (2) correct the ventilation system, (3) install fire and cell alarm systems immediately, (4) install working smoke detectors in cells, (5) reestablish single celling, and (6) increase staff. Pratt also requested that the court order the defendants to show cause as to why the facility should be allowed to function in conflict with § 83-954 and the Enabling Act of Congress. Pratt requested that in the absence of such cause supported by clear authority, the district court order the immediate closing of LCC. Pratt also sought an order directing that each defendant pay him $50,000 for the damage he suffered as a result of the faulty ventilation system and the mental stress caused by the defendants' deliberate indifference to his rights, as well as any other order, cost, or fees the court deemed appropriate.

On July 8, 1997, the defendants filed a demurrer and notice of hearing, alleging that (1) the district court did not have subject matter jurisdiction, (2) Pratt failed to state a claim upon which relief can be granted, and (3) Pratt has no legal capacity to sue. The defendants requested that the district court dismiss Pratt's action.

On July 17, 1997, Pratt filed a motion to strike the defendants' demurrer.

On November 7, 1997, the district court sustained the defendants' demurrer, overruled Pratt's motion to strike the defendants' demurrer, and dismissed Pratt's petition. Pratt elected to stand on his petition and now appeals.

## ASSIGNMENT OF ERROR

On appeal, Pratt alleges a number of errors but generally contends that the district court erred in sustaining the defendants' demurrer without setting forth the grounds upon which the demurrer was sustained.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but the court is not required to accept as true the conclusions of the pleader. *Coburn v. Reiser,* 254 Neb. 495, 577 N.W.2d 289 (1998). In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Id.*

The use and determination of a demurrer in actions for declaratory judgment are controlled by the same principles as those that apply in other cases. *Logan v. Department of Corr. Servs.,* 254 Neb. 646, 578 N.W.2d 44 (1998). In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the trial court. *Id.* Lack of jurisdiction is a proper ground for a demurrer to a petition. *Id.*

## ANALYSIS

■ Initially, we address the fact that in sustaining the defendants' demurrer, the district court failed to set forth its reasons for doing so. When there are no specific findings before an appellate court, the court must review the grounds of the demurrer to determine if any one objection, or any objections taken together, support the trial court's decision to sustain the demurrer and dismiss the action. *Coburn, supra.*

■ On appeal, Pratt contends that the district court erred in sustaining the defendants' demurrer. The defendants argue that Pratt's petition requests declaratory relief given the existence of a present actual controversy and the construction of Pratt's allegations under § 83-954. The defendants allege that Pratt's action is barred by the doctrine of sovereign immunity under article V, § 22, of the Nebraska Constitution and that therefore, the district court properly sustained the defendants' demurrer for lack of jurisdiction. We agree with the defendants, and because we conclude that the district court correctly sustained the defendants' demurrer on lack of jurisdiction, we do not discuss the defendants' other grounds for demurrer. See *Parker v. Lancaster Cty. Sch. Dist. No. 001,* 254 Neb. 754, 579 N.W.2d 526 (1998) (holding that order sustaining demurrer will be affirmed on appeal if any one of grounds on which it was asserted is well taken).

■ The provision of the Nebraska Constitution stating that the state may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought is not self-executing, and legislative action is necessary to waive the state's sovereign immunity. *Logan v. Department of Corr. Servs.,* 254 Neb. 646, 578 N.W.2d 44 (1998). A waiver of sovereign immunity is found only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction. *Id.* Just as an appellate court must determine the scope of review in an action for declaratory judgment from the nature of the dispute, so does such a court determine whether sovereign immunity lies. *Id.*

■ The state's immunity from suit is unaffected by declaratory judgment statutes; the Uniform Declaratory Judgments

Act, Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1995), does not waive the state's sovereign immunity, and a plaintiff who seeks declaratory relief against the state must find authorization for such remedy outside the confines of that act. *Logan, supra.*

A declaratory or other equitable action against a state officer or agent attacking the constitutionality of a statute or seeking relief from an invalid act or an abuse of authority by an officer or agent is not a suit against the state and is therefore not prohibited by principles governing sovereign immunity. *Id.* A declaratory judgment action seeking to compel action on the part of a state official is barred by the doctrine of sovereign immunity; however, if such a suit simply seeks to restrain the state official from performing affirmative acts, it is not within the rule of immunity. *Id.*

In the instant case, Pratt filed an action against the defendants in their individual and official capacities. In Pratt's petition, he sought an injunction directing the defendants to (1) bring the number of inmates down to the design capacity, (2) correct the ventilation system, (3) install fire and cell alarm systems immediately, (4) install working smoke detectors in cells, (5) establish single celling, and (6) increase staff. Pratt also requested that the district court order the defendants to show cause as to why the facility should be allowed to function in conflict with § 83-954 and the Enabling Act of Congress. Pratt requested that in the absence of such cause supported by clear authority, the district court order the immediate closing of LCC.

In essence, Pratt was not seeking to restrain the state officials from performing affirmative acts, but, rather, Pratt sought to compel the state officials in the instant action to perform the above-mentioned acts. For this reason, we conclude that the portion of Pratt's petition against the defendants requesting that the officials perform the above-mentioned affirmative acts is essentially an action against the State and, therefore, barred by sovereign immunity.

In addition to the relief discussed above, Pratt also sought an order directing that each defendant pay him $50,000 for the damage he suffered as a result of the faulty ventilation system and the mental stress caused by the defendants' deliberate indifference to his rights, as well as any other order, cost, or

fees the court deemed appropriate. In *Kane v. Vodicka*, 238 Neb. 436, 471 N.W.2d 136 (1991), the Nebraska Supreme Court held that the district court had subject matter jurisdiction over an action by a prison inmate against officials seeking monetary damages for alleged unsanitary conditions of a prison kitchen. In doing so, the Nebraska Supreme Court stated that "Neb. Rev. Stat. § 81-8,214 (Cum. Supp. 1990) specifically vests in the district court jurisdiction to hear tort claims filed against the state." *Kane*, 238 Neb. at 438, 471 N.W.2d at 138.

Under Neb. Rev. Stat. § 81-8,212 (Reissue 1996), all tort claims must be filed with the Risk Manager in the manner prescribed by the State Claims Board. Additionally, Neb. Rev. Stat. § 81-8,213 (Reissue 1996) states:

> No suit shall be permitted under the State Tort Claims Act unless the State Claims Board has made final disposition of the claim, except that if the board does not make final disposition of a claim within six months after the claim is made in writing to the board, the claimant may, by notice in writing, withdraw the claim from consideration of the board and begin suit under such act.

In the instant case, although certain allegations in Pratt's petition sound in tort, Pratt's petition does not show on its face that his tort claim was filed with the Risk Manager nor does the petition show that the State Claims Board made a final disposition of Pratt's claim or that the board failed to make a final disposition of Pratt's claim within 6 months after his claim was made in writing to the board. Accordingly, we determine that the district court also lacked jurisdiction over Pratt's claim for monetary damages. Although this is the case, we are required to give Pratt an opportunity to remedy this defect in his petition. When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. Neb. Rev. Stat. § 25-854 (Reissue 1995); *State ex rel. Wood v. Fisher Foods*, 254 Neb. 982, 581 N.W.2d 409 (1998). In this case, there is a reasonable possibility that Pratt could correct the defect in his petition regarding his claim for monetary damages, and therefore, although the district court correctly sustained the defendants' demurrer on the basis that it lacked subject matter

jurisdiction, we conclude that the district court erred in dismissing Pratt's petition without affording him an opportunity to amend his petition. For these reasons, we affirm the district court's dismissal of all allegations of Pratt's petition seeking to compel affirmative actions on the part of state officials and reverse, and remand with directions to allow filing a petition as to the allegations sounding in tort.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.