IN RE INTEREST OF SABRIENIA B.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ROSEANN H., APPELLANT.
621 N.W. 2d 836

Filed January 23, 2001.   No. A-00-277.

Jeffrey A. Wagner, of Schirber Law Offices, and, on brief, Vicki L. Boone-Lawson for appellant.

James S. Jansen, Douglas County Attorney, and Karen Kassebaum Nelson for appellee.

Irwin, Chief Judge, and Inbody and Carlson, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Roseann H. appeals from an order of the separate juvenile court of Douglas County, Nebraska, which terminated her parental rights regarding her daughter, Sabrienia B. On appeal, Roseann challenges the juvenile court's overruling of a demurrer as well as the court's finding of sufficient evidence to terminate her parental rights. Because we find that the State's petition for termination of parental rights failed to allege facts sufficient to constitute an action for termination of parental rights under the Nebraska Indian Child Welfare Act (ICWA), we reverse, and remand for further proceedings.

## II. BACKGROUND

On November 18, 1997, the State filed a petition seeking to have Sabrienia declared a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 1997) as a juvenile lacking

proper parental care by reason of the fault or habits of Roseann. Temporary protective custody was placed in the Nebraska Department of Health and Human Services (DHHS) on November 21. An amended petition was filed on December 12. On May 15, 1998, the juvenile court entered an order adjudicating Sabrienia to be a juvenile within the jurisdiction of the court.

On September 23, 1998, the juvenile court entered an order in which the court specifically found that Sabrienia "is an Indian child within the meaning of the Indian Child Welfare Act and held that the ICWA would "apply to these proceedings and to any proceedings which may involve termination of the natural mother's parental rights." Further, on October 1, all parties, including the State and Roseann, stipulated to Sabrienia's status as a child under the ICWA and the ICWA's application to any termination proceedings.

On March 5, 1999, the State filed a motion for termination of parental rights. The State alleged that termination was appropriate under Neb. Rev. Stat. § 43-292(1), (2), (6), and (7) (Reissue 1998). The State alleged that termination of Roseann's parental rights was in the best interests of Sabrienia. On March 26, Roseann filed a demurrer to the termination pleading, alleging:

> The Motion fails to state a cause of action upon which relief may be granted for the reason that these proceedings are to be conducted in accordance with the provisions of the Nebraska Indian Child Welfare Act, pursuant to an Order of this Court . . . and the allegations contained in the State's Motion fail to articulate an essential element to sustain a finding and Order of termination.

On May 21, 1999, the juvenile court entered an order denying Roseann's demurrer. In the order, the court held that Roseann had been advised at a prior protective custody hearing and at the adjudication hearing that termination of parental rights was a potential disposition and therefore held that "notice and due process have been served." Without making any findings as to whether the State's pleading alleged sufficient facts to state a cause of action, the court overruled Roseann's demurrer.

Roseann filed a direct appeal from the court's order overruling her demurrer. On or about September 13, 1999, this court summarily dismissed Roseann's appeal, finding that an order

overruling a demurrer is not a final, appealable order. The case thus proceeded to a hearing on the State's motion for termination of Roseann's parental rights.

On February 25, 2000, the court entered an order terminating Roseann's parental rights. The court specifically found that the State had proved beyond a reasonable doubt that termination was warranted under § 43-292(1), (2), and (6). The court further specifically found that the State had proved the requirements of the ICWA, Neb. Rev. Stat. § 43-1505(4) and (6) (Reissue 1998). The substance of these provisions of the ICWA will be set forth in more detail in the analysis section of this opinion. Finally, the court found that Sabrienia's best interests warranted termination of Roseann's parental rights. As such, Roseann's parental rights were terminated. Roseann filed this appeal.

### III. ASSIGNMENTS OF ERROR

Roseann has assigned six errors on appeal. Among these, Roseann asserts that the juvenile court erred in overruling her demurrer and finding that the State's motion for termination of parental rights stated a cause of action. Because our resolution of this assigned error disposes of the appeal, we will not further discuss Roseann's remaining assignments of error.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

A defendant may demur to a petition when it appears on its face that the petition does not state facts sufficient to constitute a cause of action. *Sweeney v. City of Gering*, 8 Neb. App. 675, 601 N.W.2d 238 (1999). Whether a petition states a cause of action is a question of law regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Nebraska Beef v. Universal Surety Co.*, 9 Neb. App. 40, 607 N.W.2d 227 (2000). In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged. *Id.*

We apply these standards to the present case despite the fact that the State sought termination of Roseann's parental rights

through a "motion for termination of parental rights," rather than through a petition. Neb. Rev. Stat. § 43-291 (Reissue 1998) provides that the State may seek termination through filing an "original petition, a supplemental petition, or motion." As such, we conclude that the above standards govern review of a demurrer regardless of which pleading is filed by the State.

## 2. Propositions of Law: Pleadings

■ A petition must contain a statement of the facts constituting the cause of action in ordinary and concise language. *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993). The ultimate facts to be established should be alleged in a pleading. *Id*. Pleadings are defined as the written statements by the parties of the facts constituting their respective claims and defenses. *Id*.

■ Generally, the purpose of a pleading is twofold: (1) to eliminate from consideration contentions which have no legal significance and (2) to guide the parties and the court in the conduct of cases. *Id*. The purpose of pleadings is to frame the issues upon which a cause is to be tried and advise the adversary as to what the adversary must meet. *Id*.

■ The issues in a given case will be limited to those which are properly pled. *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998). A court may not enter judgment on an issue not presented by the pleadings. See *id*. (holding court may not enter summary judgment on issue not presented by pleadings).

## 3. ICWA and Termination of Parental Rights

The case at bar presents us with the question of how to apply the above propositions and standards governing pleadings and demurrers in the context of an application to terminate parental rights in a case that is also governed by the ICWA. Specifically, the question presented is whether the State's motion for termination of parental rights alleged facts sufficient to constitute a cause of action for termination of parental rights under the ICWA. Because the motion failed to place at issue essential factors mandated by the ICWA for termination of parental rights, we conclude that the State's motion was insufficient to state a cause of action.

### (a) § 43-292

Section 43-292 generally governs termination of parental rights in juvenile court actions. Section 43-292 provides that the court may terminate parental rights when the court finds such action to be in the best interests of the juvenile and 1 or more of 10 grounds for termination have been proved by the State. The grounds for termination relevant to the present action are as follows:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition;

(2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination.

### (b) § 43-1505

Section 43-1505 sets forth guidelines to govern courts in any involuntary proceeding in a state court when the court knows or has reason to know that an Indian child is involved. Relevant to the present case, § 43-1505 further provides as follows concerning termination of parental rights in cases involving an Indian child:

(4) Any party seeking to effect . . . termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

. . . .

(6) No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including

testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

### (c) Application and Resolution

Roseann argues that the above-cited provisions of § 43-1505 specifically require the State to prove that active efforts have been made to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family and that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. Roseann argues that the ICWA imposes requirements that are separate and in addition to the general requirements of § 43-292 and that the State, therefore, must plead sufficiently to put the requirements of § 43-1505 in issue.

In response, the State asserts, in essence, that it sufficiently raised the issue of "active efforts . . . to provide remedial services and rehabilitative programs" required by § 43-1505(4) by pleading that "reasonable efforts t[o] preserve and reunify the family if required under section 24 of [the juvenile code] under the direction of the court, have failed to correct the conditions leading to the determination" that Sabrienia lacked proper parental care. Similarly, the State asserts, in essence, that it sufficiently raised the issue of "serious emotional or physical damage" to Sabrienia, brief for appellee at 21, required by § 43-1505(6) by pleading that "terminating the parental rights between Roseann . . . and Sabrienia . . . is in the best interests of said child." The State further asserts that Roseann could have filed a motion to make more definite or certain if she "was concerned or confused that the State's allegations were too indefinite or uncertain for her to understand the Motion to Terminate Parental Rights or to adequately prepare a defense." Brief for appellee at 21.

### (i) Indian Child Welfare Act

The federal Indian Child Welfare Act was enacted to promote the stability and security of Indian tribes and families through the establishment of minimum federal standards for the

removal of Indian children from their families and placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture. *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992). When Congress enacted the act, it had two main goals: (1) protecting the best interests of the Indian children and (2) promoting the stability and security of Indian tribes and families. *Id.* The act is based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests. *Id.*

### (ii) Active Efforts

As noted above, § 43-1505(4) specifically provides that in a termination of parental rights action concerning an Indian child, the State must prove that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." The State argues that this specific requirement was adequately pled and placed in issue when they alleged, while specifically citing § 43-292(6), that "reasonable efforts t[o] preserve and reunify the family if required . . . under the direction of the court, have failed to correct the conditions" which gave rise to the earlier adjudication of Sabrienia. We hold that the ICWA requirement of "active efforts" is separate and distinct from the "reasonable efforts" provision of § 43-292(6) and therefore requires the State to plead active efforts by the State to prevent the breakup of the family.

As the Oregon Court of Appeals has held, the federal Indian Child Welfare Act effects Congress' intent to serve the goal of preventing the breakup of Indian families by mandating application of remedial and rehabilitative measures. *In the Matter of Jade Charles*, 70 Or. App. 10, 688 P.2d 1354 (1984). By comparison, § 43-292(6) requires the State to show that "reasonable efforts to preserve and reunify the family *if required under section 43-283.01*, under the direction of the court, have failed to correct the conditions" which led to adjudication. (Emphasis supplied.) By its very terms, § 43-292(6) does not require even reasonable efforts in all situations and does not mandate that "reasonable efforts" be "active efforts" in all circumstances. The ICWA, however, mandates active efforts in every case involving an Indian child. See § 43-1505(4).

In the present case, the State alleged the following in support of the "reasonable efforts" allegation: "A. Roseann . . . has failed to complete the psychiatric evaluation as ordered by the court on January 30, 1998, May 15, 1998, November 6, 1998 and February 2, 1999. B. Roseann . . . has failed to keep Health and Human Services and the Court appraised [sic] of her whereabouts." These are the only allegations in the motion for termination which are even arguably applicable to the question of whether the State alleged sufficiently to meet the "active efforts" requirement of the ICWA. Neither of these allegations contains any assertion that the State has made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that the efforts have proved unsuccessful.

In the present case, the court made a specific finding, and the parties further stipulated, that Sabrienia is an Indian child under the ICWA. The court's finding and the parties' stipulation specifically provided that the ICWA provisions would govern any action to terminate Roseann's parental rights. The motion filed by the State failed to place in issue a material element of the ICWA, that active efforts were made to provide remedial services and rehabilitative programs, and therefore, the motion failed to state a cause of action for termination of Roseann's parental rights under the ICWA. As such, the demurrer filed by Roseann should have been granted, because as specifically alleged in the demurrer, the State failed to place in issue a material element of the ICWA.

We further conclude that this is so despite the fact that the court ultimately concluded that evidence was presented at trial which adequately proved the required element of the ICWA. The court made specific findings in the termination order that active efforts were made and that those efforts failed. However, when an appellate court reviews a trial court's ruling on a demurrer, the court cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might have been adduced at trial. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998); *Pratt v. Clarke*, 8 Neb. App. 199, 590 N.W.2d 426 (1999). As such, despite whatever evidence the State may have

ultimately presented at trial, the motion itself was inadequate to put essential elements at issue, and the demurrer should have been granted.

### (iii) Serious Emotional or Physical Harm

Similarly, we conclude that the State's assertion that pleading that Sabrienia's best interests would be served by termination of Roseann's parental rights does not sufficiently place at issue the ICWA requirement that the State prove that continued custody of Sabrienia by Roseann is likely to result in serious emotional or physical harm. Although our resolution of the "active efforts" issue compels us to conclude that the demurrer should have been granted on that ground, for the sake of completeness, we additionally find that the demurrer should have been granted on this ground. We reach this conclusion because it is clear that there are situations in which the best interests test under § 43-292 could be satisfied without any evidence of "serious emotional or physical harm" being a likely result of continued custody by the natural parent. The two phrases "best interests" and "likelihood of serious emotional or physical harm" do not connote synonymous situations, and the pleading of "best interests" does not sufficiently place in issue the requirement of the ICWA that the State prove that continued custody by Roseann is likely to result in serious emotional or physical harm.

### (iv) Opportunity to Amend

The conclusion that Roseann's demurrer should have been granted does not end our analysis, however. When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Nebraska Beef v. Universal Surety Co.*, 9 Neb. App. 40, 607 N.W.2d 227 (2000); *Pratt v. Clarke, supra.* In the present case, it appears possible that the State can, by amendment, cure the defects of the motion for termination of parental rights. As such, the State must be given the opportunity to amend.

### V. CONCLUSION

We find that the demurrer should have been sustained. The defects in the State's motion for termination of parental rights

appear capable of being cured by amendment. As such, we reverse, and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.