IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF PAUL J. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF PAUL J. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

LOUISA J., APPELLANT.

Filed January 24, 2017.    No. A-16-540.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Joseph Kuehl for appellant.

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

## I. INTRODUCTION

Louisa J. appeals from an order of the Douglas County Juvenile Court, which terminated her parental rights to her four minor children, in a case in which the Nebraska Indian Child Welfare Act (NICWA) is applicable. Upon our de novo review, we find that a statutory ground to terminate exists, that the additional requirements under NICWA were met, and that termination is in the children's best interests. Accordingly, we affirm the juvenile court's order terminating Louisa's parental rights.

## II. BACKGROUND

### 1. PARTIES

Louisa is the biological mother of Valvet J., born in 2002; Angelique J., born in 2003; Robert J. Jr., born in 2004; and Paul J., born in 2006. The children's biological father, Robert J., was a party to the juvenile court proceedings below. In fact, the juvenile court terminated Robert's parental rights to all four children at the same time that it terminated Louisa's parental rights. However, Robert has not appealed the juvenile court's decision to terminate his parental rights. As a result, he is not a party to this appeal and his involvement in the juvenile court proceedings below will only be discussed as necessary to provide context.

This case is governed by NICWA, Neb. Rev. Stat. §§ 43-1501 through 43-1517 (Reissue 2008 & Supp. 2015), because Robert is an enrolled member in the Ojibwa Tribe of Minnesota and all of the children are eligible for enrollment.

### 2. PROCEDURAL HISTORY

In September 2011, the Department of Health and Human Services (the Department) developed a voluntary "safety plan" to assist Louisa with appropriately caring for and protecting her children. This safety plan was developed after the children were found at home alone with no knowledge of where Louisa was or how they could contact her. As a part of the safety plan, Louisa was not to leave the children in the care of an inappropriate or unsuitable care giver. Louisa violated this tenet of the plan on November 15, 2011.

As a result of Louisa's violation of the safety plan, the children were immediately removed from Louisa's home and placed in foster care. All of the children have remained in foster care since their removal from Louisa's home in November 2011.

In addition, on November 16, 2011, the State filed a petition alleging that Valvet, Angelique, Robert Jr., and Paul were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the faults or habits of Louisa. Specifically, the petition alleged in pertinent part, that Louisa had failed to follow through with the safety plan developed by the Department by leaving the children in the care of an inappropriate provider and that, as a result of Louisa's actions, the children were at risk for harm. At a hearing on February 27, 2012, Louisa pled no contest to these allegations and the children were adjudicated to be within the meaning of § 43-247(3)(a).

In March 2012, approximately one month after the children were adjudicated, the juvenile court ordered Louisa to participate in a rehabilitation plan designed to reunite her with the children. This plan required Louisa to participate in individual therapy with a dual diagnosis provider; complete an intensive outpatient substance abuse treatment program; continue to participate fully in her psychiatric care and take all medications as prescribed; maintain safe and stable housing for herself and her children; obtain and maintain a legal source of income; undergo random, frequent drug testing; participate in Alcoholics Anonymous/Narcotics Anonymous; participate in a community program for the chronically mentally ill; and have reasonable rights of supervised visitation with the children.

Ultimately, in April 2015, after this case had been pending in the juvenile court for almost three and one-half years, the State filed the motion for termination of Louisa's parental rights

which is the pleading on which this appeal is centered. The motion alleged that termination of Louisa's parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2014), because Louisa had substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection; § 43-292(6), because following a determination that the children were within the meaning of § 43-247(3)(a), active efforts had been made to prevent the breakup of the family, but these efforts proved unsuccessful; and § 43-292(7), because the children had been in an out-of-home placement for fifteen or more months of the most recent twenty-two months. The motion also alleged that termination of Louisa's parental rights was in the best interests of the children. In addition, pursuant to NICWA, the motion alleged that the Department had made active efforts to keep the family together, but that continuing custody of the children with Louisa would likely result in serious emotional or physical damage to the children.

On July 17, 2015, a hearing on the State's motion to terminate Louisa's parental rights began. This hearing continued on various dates in August and September 2015 and in January, February, and April 2016.

### 3. EVIDENCE PRESENTED AT TERMINATION HEARING

At the termination hearing, the State presented evidence which demonstrated that despite the length of time this case was pending in the juvenile court, Louisa made little to no progress towards reunification with her children. In particular, Louisa made no progress towards addressing her mental health issues and her substance abuse. Although the State presented the testimony of nine witnesses, the majority of the State's evidence came from three witnesses: Dr. Joseph Stankus, Laurie York, and Joslyn Thomaier. We focus our recitation of the evidence on the testimony of these three witnesses.

Dr. Joseph Stankus is a clinical psychologist who conducted a psychological evaluation of Louisa in January 2012 and again in May 2014. Dr. Stankus diagnosed Louisa as suffering from bipolar disorder, panic disorder, alcohol and cannabis dependence; and a personality disorder. After each evaluation, Dr. Stankus recommended that Louisa participate in individual therapy, a drug treatment program, random drug testing, a parenting class, and a community program for those struggling with mental health problems. In addition, he recommended that the children remain in foster care until Louisa demonstrated she was capable of caring for the children.

During his testimony at the termination hearing, Dr. Stankus indicated that in the two years between each of his psychological evaluations of Louisa, not much changed about her circumstances. He also testified that if Louisa failed to follow through with his recommendations and, thus, failed to address her mental health and her substance abuse, he would have "strong concerns" about her ability to care for her children. He noted that if Louisa cannot manage her own life, she certainly cannot care for someone else.

Laurie York is the director of the White Earth Indian Child Welfare Program. She became the ICWA case manager for Louisa and the children in 2014. York testified that when she initially began working with the family, she had concerns about whether the Department was providing Louisa with "active efforts" as is required when Indian children are involved in a juvenile court case. However, she also testified that since approximately March 2014, active efforts have been made to reunify Louisa and the children. York testified that, in her opinion, despite the active

efforts made by the Department, returning the children to Louisa would likely result in serious emotional or serious physical damage to the children. She also noted that the children had been out of Louisa's home since 2011 and that they "deserved" to have permanency. York testified that Louisa has proven that she is not capable of providing the children with safety and stability and that there were no additional services that could be provided to Louisa to improve her circumstances.

Joslyn Thomaier has been the family's Department caseworker since March 2014. Thomaier testified that despite the great efforts of the Department, Louisa has failed to make progress towards reunification with the children. In particular, Thomaier pointed to Louisa's failure to adequately address her mental health issues and her substance abuse. Thomaier also indicated that Louisa has demonstrated an inability to maintain housing, despite having an adequate income source to do so. However, Thomaier also testified that by the time of the termination hearing, Louisa had been living in a one-bedroom apartment with her boyfriend for about four or five months. Thomaier testified that she believed that termination of Louisa's parental rights was in the children's best interests. She testified that the children had been out of the home for over four years and that they needed to have some permanence in their lives. In addition, Thomaier testified that the children were thriving in their foster home placement.

In addition to the State's witnesses, Louisa called two witnesses to testify on her behalf: Wylesha Batth, Louisa's family support worker since July 2015, and Saydatou Tatieta, the visitation worker who supervised visits between Louisa and the children since August 2015. Each of these witnesses testified that Louisa and the children share a strong bond and that Louisa's visits with the children are appropriate and positive.

### 4. JUVENILE COURT ORDER

After the termination hearing, the juvenile court entered an order terminating Louisa's parental rights to Valvet, Angelique, Robert Jr., and Paul. In the order, the court found that "the allegations in all counts of the Third Motion for Termination of Parental Rights . . . are true." These allegations include, that grounds for termination of Louisa's parental rights exist pursuant to § 43-292(2), (6), and (7), and that termination of Louisa's parental rights is in the children's best interests. The allegations in the Third Motion for Termination of Parental Rights also include that active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the break-up of the family, but that the efforts proved unsuccessful and that continuing the custody of the children with Louisa would likely result in serious emotional or physical damage to the children.

Louisa appeals from the juvenile court's order.

### III. ASSIGNMENTS OF ERROR

On appeal, Louisa asserts, renumbered, that the juvenile court erred in finding (1) that the State proved that active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and (2) that termination of her parental rights was in the best interests of the children.

- 4 -

## IV. STANDARD OF REVIEW

An order terminating parental rights pursuant to NICWA is reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. See, *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002); *In re Interest of Sabrienia B.*, 9 Neb. App. 888, 621 N.W.2d 836 (2001). However, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001).

## V. ANALYSIS

On appeal, both of Louisa's assigned errors generally challenge the juvenile court's decision to terminate her parental rights to her children. Before we address Louisa's specific assertions, however, we must outline the relevant law pertinent to the termination of parental rights in a case in which NICWA is applicable.

To terminate parental rights, the State must prove by clear and convincing evidence that one or more of the statutory grounds listed in § 43-292 have been satisfied and that termination is in the child's best interests. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006).

NICWA, however, adds two additional elements the State must prove before terminating parental rights in cases involving Indian children. *In re Interest of Walter W., supra*. First, the State must prove by clear and convincing evidence that active efforts have been made to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. See § 43-1505(4); see also *In re Interest of Walter W., supra*. Second, the State must prove by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. See § 43-1505(6).

We note that although Louisa has not assigned any error with respect to the juvenile court's findings that statutory grounds for termination exist and that her continued custody will result in emotional or physical damage to the children, we have reviewed the record and find no plain error as to these elements. The State proved by clear and convincing evidence that termination of Louisa's parental rights was warranted pursuant to § 43-292(7), because the children had been out of Louisa's home for over four years by the time the termination hearing concluded. In addition, the State proved by evidence beyond a reasonable doubt, through York's testimony, that Louisa's continued custody of the children was likely to result in serious emotional or physical damage to the children.

We now turn to Louisa's specific assertions of error.

## 1. ACTIVE EFFORTS

Louisa contends the Department failed to make active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, as is required by § 43-1505(4). We disagree with Louisa's contention.

The Nebraska Supreme Court has previously stated that "there is no precise formula" for determining if active efforts have been made in a particular case. *In re Interest of Walter W., supra*. While the active efforts standard clearly requires more than the reasonable efforts standard that applies in non-NICWA cases, and, while at least some efforts should be "culturally relevant," ultimately, a determination of active efforts requires a case-by-case analysis. *Id*.

In this case, York testified that the Department had made active efforts to provide remedial services and rehabilitative programs for Louisa and her children since at least March 2014. These active efforts have included, placing the children in a home where their foster parents are registered members of Native American tribes and developing a cultural plan to ensure the children's continued contact and participation with their Native American culture. In addition, the Department has provided Louisa with a number of services, including, case management, psychological evaluations, individual therapy, random drug testing, "family group decision-making," and family support services. In order to assist Louisa in taking advantage of all of these services, the Department has also provided her with bus tickets and other means of transportation, petty cash for expenses, and a cellular telephone. The Department has also acted as an advocate for Louisa. At one point in time, the family's caseworker, Thomaier, pleaded with a representative of a community program to give Louisa a second chance after the program refused to permit Louisa to continue due to her sporadic attendance.

In her brief on appeal, Louisa points to several areas where the Department's efforts may have fallen short. First, Louisa asserts that the Department failed to provide her with finances to help her obtain housing. We recognize that there is evidence in the record to suggest that Louisa struggled to obtain stable and consistent housing during the pendency of the case. However, we also recognize that there is evidence that Louisa was provided with some financial assistance and other evidence which suggests that Louisa's struggle to obtain housing was not due to a lack of funding, but due to her inability to appropriately budget the money she had. The Department did provide Louisa with assistance in finding appropriate housing within her budgetary limitations.

Louisa next asserts that the Department's decision to require Louisa to change therapists in 2014 did not constitute active efforts. This assertion is not supported by the record. Louisa changed therapists in 2014 in order to comply with the juvenile court's order that she attend dual-diagnosis therapy to address both her mental health issues and her substance abuse. Although Louisa was resistant to changing therapists, the evidence revealed that Louisa's new dual-diagnosis therapist has a rapport with Louisa and is capable of helping her with both her mental health issues and her substance abuse. Our review of the record reveals that the Department made active efforts towards obtaining a qualified and appropriate therapist to help Louisa with her mental health issues.

Upon our de novo review of the record, we find that the evidence presented at the termination hearing sufficiently demonstrates that the Department made active efforts to provide

services and programs to Louisa and her family since at least March 2014. In her brief on appeal, Louisa also argues that because active efforts were made only since March 2014, that she was not provided enough time to reunite with her children. Louisa's assertion lacks merit.

Although the record indicates that for the first two years this case was pending in the juvenile court, there is some question about whether the Department was doing as much as it "possibly could have been" under an active efforts standard, it is clear that for the last two years this case was pending, the Department was providing Louisa with active efforts toward achieving reunification with her children. Despite the two years of active efforts, Louisa failed to make significant or sustainable progress towards reunification. Moreover, while we recognize that during the beginning stages of the juvenile court case the Department may have failed to provide active efforts, this does not mean that the Department failed to provide any efforts. The record is clear that Louisa has been receiving services from the Department since prior to the petition being filed in this case in November 2011. Despite all of those efforts, coupled with the Department's recent active efforts, Louisa has not made progress towards reunification with her children. Louisa's assertion that she has not been given enough time to turn her life around is simply without merit.

## 2. BEST INTERESTS

Louisa also challenges the juvenile court's finding that the State proved by clear and convincing evidence that termination of her parental rights is in the children's best interests. Specifically, she argues that termination is not appropriate because she has made progress towards reunification with the children and because she and the children share a strong bond. Upon our de novo review of the record, we conclude that the juvenile court did not err in finding that termination of Louisa's parental rights is in the children's best interests.

As Louisa suggests in her brief on appeal, there was evidence presented at the termination hearing that Louisa had made recent progress towards rehabilitating herself and reuniting with her children. This recent progress included Louisa being "fairly consistent" in submitting to drug testing since March 2014; attending visitation with the children on a consistent basis since approximately July 2015; improving her parenting skills; and obtaining housing in approximately September 2015.

However, the majority of the evidence presented at the termination hearing revealed that Louisa has failed to make any consistent or long-term progress towards rehabilitating herself and reuniting with her children. Most significantly, the evidence revealed that despite the more than four years this case was pending in the juvenile court, Louisa failed to take adequate steps to address her substance abuse or her mental health issues. By the time of the termination hearing, Louisa continued to use marijuana on a regular basis. She has not attended an outpatient treatment program despite having been ordered to do so as early as March 2012. In addition, she failed to consistently take her mental health medication or to regularly attend her dual diagnosis therapy. Louisa failed to attend and was unsuccessfully discharged from a community program designed to help people like Louisa who are struggling with chronic mental health issues. Louisa's failure to address these issues is particularly concerning in light of the results of her psychological evaluations which indicated that if Louisa could not manage her substance abuse and her mental health, she would not be capable of appropriately caring for her children. Upon our de novo review

of the record, we find that Louisa had not made significant, long-term progress towards reunification with her children despite the length of time this case was pending and despite the great efforts of both the Department and the juvenile court.

Evidence presented at the termination hearing indicated that the children need permanence and stability in their lives. In fact, the children's therapist testified that the children were struggling due to the length of time they had been in foster care. The lack of permanency in their lives had negatively affected their well-being. Because Louisa failed to make any significant progress towards improving her own circumstances, she is still not able to provide the children with the permanency and the stability they need. So, while we agree with Louisa that the evidence presented at the termination hearing revealed that she and the children share a strong bond, we cannot ignore that this case has been pending for over four years and that the children cannot, and should not, be suspended in foster care for any longer. See *In re Interest of Walter W., supra* (children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity). As York testified at the termination hearing, it is time for the children to "move forward."

The evidence presented at the termination hearing clearly and convincingly demonstrates that it is in the children's best interests that Louisa's parental rights be terminated.

## VI. CONCLUSION

Upon our de novo review of the record, we find that there was sufficient evidence presented at the termination hearing to warrant the termination of Louisa's parental rights to Valvet, Angelique, Robert Jr., and Paul. Specifically, we conclude that the juvenile court did not err in finding that the State proved by clear and convincing evidence that the Department made active efforts to prevent the breakup of this family and that termination of Louisa's parental rights is in the children's best interests. Accordingly, we affirm the order of the juvenile court.

AFFIRMED.