No. 88-605

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

IN THE MATTER OF THE PARENTAL
PLACEMENT OF  M. R. D. B.,
a minor child.

---

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Claudeen Bates Arthur argued, General Counsel, White
          Mountain Apache Tribe, Whiteriver, Arizona
          D. Michael Eakin, Montana Legal Services, (of counsel),
          Billings, Montana

     For Respondent:

          Mark A. Bryan argued; Bryan & Atkins, Bozeman, Montana

---

                    Submitted:   September 25, 1989

                    Decided:     February 14, 1990

Filed:

                    _____
                              Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

The appellant, White Mountain Apache Tribe, filed a motion to dismiss the pending adoption proceedings in the District Court, Eighteenth Judicial District, Gallatin County, for lack of jurisdiction under 25 U.S.C. § 1911(a) of the Indian Child Welfare Act (ICWA). The appellant contended in District Court that the minor child Michelle Rae Dawn Baier (Michelle) is a ward of the White Mountain Apache Tribal Council and pursuant to 25 U.S.C. § 1911(a), the Tribal Court had exclusive jurisdiction over proceedings involving the child. The District Court denied the Tribe's motion to dismiss holding that the Tribal Court maintained continuing but not exclusive jurisdiction and therefore, the Montana court had concurrent jurisdiction. It is from this order the White Mountain Apache Tribe appeals. We reverse.

Oliviane Marie Baier (Oliviane), the natural mother of the child, is a full-blooded White Mountain Apache and an enrolled member of the Tribe. Oliviane was adopted by Harold and Betty Baier, non-Indians, and raised in Gallatin County, Montana, from 1972 to 1982.

Prior to her pregnancy, in August of 1982, Oliviane moved from Montana to the White Mountain Apache Reservation. Oliviane traveled to the reservation to become acquainted with her biological family. In January of 1983, she returned to Montana. On March 5, 1984, in Billings, Montana, Oliviane gave birth to Michelle, a one-half blood White Mountain Apache. The father is unknown.

Shortly after Michelle's birth, on March 18, 1984, Oliviane placed Michelle with Dr. James and Judith Collins (the Collins) of Fort Collins, Colorado, for adoption. In August of 1984, after placing the child with the Collins',

- 2 -

Oliviane returned to the reservation and completed her high school education. She remained on the reservation until 1988.

After waiting the time required by Colorado law, on March 13, 1985, Collins filed a petition for adoption. However, on May 22, 1985, with the assistance of the White Mountain Apache Tribe, Oliviane withdrew her consent to the Colorado adoption.

On May 29, 1985, Oliviane and the White Mountain Apache Tribe jointly petitioned the White Mountain Apache Tribal Court to accept jurisdiction pursuant to the ICWA. The following day the Tribal Court held a hearing on the petition. After the hearing, the Tribal Court issued an order accepting jurisdiction over the care and custody of the child. It provided that unless otherwise ordered by the Tribal Court, the care and custody of the child would be with her natural mother, that the White Mountain Apache Tribal Social Services was to keep the court informed on a weekly basis regarding the care of the child; and that the court would set the case for review.

Prior to Michelle being brought to the reservation, proceedings had been filed in Colorado alleging that Oliviane had neglected and abandoned Michelle. In view of the seriousness of these allegations against Oliviane, the Tribal Court set the matter for review on July 3, 1985. After hearing testimony and examining the psychological evaluation and personality assessment of Oliviane, the Tribal Court ordered that it would retain jurisdiction of Michelle; that Michelle shall remain a ward of the court; that the Tribal Social Services shall provide the court with reports on Oliviane's visitations of Michelle and assessments thereof; and further provide the court with a rehabilitative plan to reunite the family.

On July 25, 1985, the Colorado court, recognizing and giving full faith and credit to the Tribal Court orders, dismissed the adoption proceedings and ordered Michelle to be turned over to the Tribal Court Social Services. Michelle was brought to the reservation on July 26, 1985. Although Michelle was a ward of the Tribal Court, and under the supervision of the Tribal Social Services, Oliviane was given physical custody of Michelle.

On May 27, 1986, the Tribal Court ordered Michelle removed from Oliviane's physical custody for Michelle's own protection. The Tribal Court again affirmed the wardship and Michelle was placed with an Indian foster family on the reservation. On December 2, 1986, Oliviane filed a motion for return of custody. Finally, on October 23, 1987, the Tribal Court heard Oliviane's motion for return of custody. The Tribal Court allowed Oliviane to regain physical custody of the child, indicating its expectation that Oliviane would raise the child in her home. Furthermore, the court ordered Oliviane to participate in a home study and evaluation to be accomplished before December 8, 1987.

On November 15, 1987, Michelle was taken to Bozeman, Montana, with her grandparents. Later, on December 18, 1987, the Tribal Court issued an order requiring Oliviane to complete psychological evaluations as ordered on October 26, 1987, and to file them with the Tribal Court.

In January of 1988, Oliviane returned to Bozeman and enrolled as a student at Montana State University. Since January, 1988, Oliviane has remained in Montana and has not returned to the reservation. On February 22, 1988, The Collins' filed a notice of parental placement with the District Court of the Eighteenth Judicial District. On February 25, 1988, Oliviane placed Michelle with the Collins' pursuant to the Montana Private Placement Adoption Law. Finally, on

- 4 -

March 31, 1989, Oliviane complied with the Tribal Court order of October 26, 1987, and December 18, 1987, by submitting an evaluation by Dr. Straynham to the Tribal Court.

On April 20, 1988, a hearing was held in Montana District Court where Oliviane confirmed her consent to the adoption and the court ordered an investigation. On May 3, 1988, after receiving notice of the Montana proceedings, the Tribe filed a motion to dismiss for lack of jurisdiction with the District Court. The Tribe also filed a petition in the Tribal Court for an order directing Oliviane to show cause why the custody order the Tribal Court should not be modified.

On May 13, a hearing was held in Montana District Court. A stipulation was entered into between the Tribal Court, the Collins', and Oliviane leaving temporary custody of Michelle with the Collins' pending further proceedings of the District Court.

On May 27, 1988, the Tribal Court issued an order finding Oliviane in contempt of the October 26, 1987 order. Furthermore, the court stated that Michelle was a ward of the court, and ordered Michelle be returned to the custody of the Tribal Social Services.

On June 1, 1988, the Tribe filed a motion for emergency modification of the District Court's order of temporary placement of the child with the Collins', and requested that the court order all parties to comply with the May 27, 1988 Tribal Court order.

On October 13, 1988, the Montana District Court order denied the Tribe's motion to dismiss and motion for change of temporary custody and set a date for the final hearing of the adoption. The District Court in its order found that Michelle was not a ward of the Tribal Court, thus the Tribal Court lacked exclusive jurisdiction over Michelle.

Furthermore, the District Court asserted it held concurrent jurisdiction over the adoption proceeding pursuant to 25 U.S.C. 1911(b) of the ICWA.

The Tribe raises a number of challenges to the District Court's rulings, but the pivotal issue is whether the District Court properly decided that it had jurisdiction. Because it did not, this appeal may be resolved without reaching the remaining issues.

The Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901-1963 was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. Mississippi Choctaw v. Holyfield (1989), ___ U.S. ___, 109 S.Ct. 1597, 1599-1600, 104 L.Ed.2d 19, 36. Studies undertaken by the Association on American Indian Affairs in 1969 and 1974, and presented in ICWA Senate hearings, showed that 25 to 35 percent of all Indian children had been separated from their families and placed in adoptive families, foster care or institutions. Mississippi Choctaw, ___ U.S. ___, 109 S.Ct. at 1600, 104 L.Ed.2d at 36. H.R. Rep. no. 95-1386 at 9 (1978).

The Senate and House Hearings not only focused on the devasting impact to Indian families separated by abusive foster care practices, but also on the harm to the tribes themselves by the wholesale removal of their children. Mississippi Choctaw, ___ U.S. ___, 109 S.Ct. at 1600, 104 L.Ed.2d at 37. For example, Calvin Isaac, Tribal Chief of the Mississippi Band of Choctaw Indians and representative of the National Tribal Chairmen's Association testified as follows:

- 6 -

Culturally, the chances of Indian survival are significantly reduced if our children, the only real means for the transmission of the tribal heritage, are to be raised in non-Indian homes and denied exposure to the ways of their People. Furthermore, these practices seriously undercut the tribes' ability to continue as self-governing communities. Probably in no area is it more important that tribal sovereignty be respected than in an area as socially and culturally determinative as family relationships.

Mississippi Choctaw, ___ U.S. at ___, 109 S.Ct. at 1597, 104 L.Ed.2d at 37; 95th Cong., 2d Sess. (1978) at 193.

The Congressional findings that were incorporated into the ICWA reflect these sentiments. The following Congressional findings are set forth at 25 U.S.C. § 1901:

. . .

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children . . .;

(4) that an alarming high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarming high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the culture and social standards prevailing in Indian communities and families.

At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Mississippi Choctaw, ___ U.S. ___, 109 S.Ct. at 1601, 104 L.Ed.2d at 38. The ICWA provides for exclusive jurisdiction

- 7 -

in the Tribal Court pursuant to 25 U.S.C. § 1911(a), which states in pertinent part:

> . . . Where an Indian child is a ward of the tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

The tribe contends that Michelle is a ward of the Tribal Court, thus giving exclusive jurisdiction to the Tribal Court under § 1911(a). The Collins' urge this Court to affirm the District Court's order granting the District Court concurrent jurisdiction under 25 U.S.C. § 1911(b). The Collins' argue that the Tribal Court lost its wardship status over Michelle when it granted physical custody to Oliviane on October 26, 1987. Furthermore, the Collins' contend the Tribal Court violated its own juvenile code which set a one year time limit on orders. To resolve the issue of jurisdiction, a review of Tribal Court orders and the District Court order is necessary.

In May of 1985, Oliviane requested the Tribe to assist her in petitioning the Tribal Court to take jurisdiction over the care and custody of her child and in revoking her consent to the Colorado adoption. On May 29, 1985, Oliviane and the Tribe jointly petitioned the Tribal Court to accept jurisdiction pursuant to the ICWA. The next day, after a hearing before the Tribal Court on the petititon, the Tribal Court accepted jurisdiction over Michelle. The Tribe argues that the Tribal Court's order of May 30, 1985, placed jurisdiction over the care and custody of Michelle in the Tribal Court, thereby making the child a ward of the Tribal Court. Although the Tribal Court order accepting jurisdiction did not specifically state that Michelle is "a ward of the Tribal Court," this Court has long held that an infant becomes a ward of the court when its parents submit

themselves to the jurisdiction of the court. Barbour v. Barbour (1958), 134 Mont. 317, 327, 330 P.2d 1093, 1098; Lay v. District Court (1948), 122 Mont. 61, 72, 198 P.2d 761, 767; Wolz v. Wolz (1940), 110 Mont. 458, 463, 102 P.2d 22, 24. Oliviane submitted herself to the jurisdiction of the Tribal Court when she withdrew her consent to the Colorado adoption, and subsequently petitioned the Tribal Court to accept jurisdiction pursuant to 25 U.S.C. § 1911, et seq. Thus, Michelle became a ward of the Tribal Court on May 30, 1985.

Subsequent orders by the Tribal Court firmly establish exclusive jurisdiction of the Tribal Court under § 1911(a). On July 3, 1985, prior to Michelle arriving at the reservation, the Tribal Court reaffirmed the wardship status of Michelle when it ordered that "Michelle remain a ward of the Tribal Court as previously ordered on May 30, 1985."

On May 27, 1986, the Tribal Court ordered Michelle removed from Oliviane's physical custody for Michelle's own protection. The Tribal Court again specifically addressed the wardship and reasserted that "Michelle is a ward of the Tribal Court unless otherwise ordered by the Tribal Court." Subsequently, the Tribal Social Services placed Michelle with an Indian foster family on the reservation.

On October 24, 1987, the Tribal Court, in response to Oliviane's petition to regain custody of Michelle, dissolved the foster care of Michelle, and granted Oliviane physical custody of Michelle. The Collins' contend that Michelle ceased to be a ward of the Tribal Court when the court granted physical custody to the mother. The District Court in its order agreed with respondents' contention that the Tribal Court lost exclusive jurisdiction under § 1911(a). Both the Collins' and the District Court are incorrect in their assertions that the Tribal Court's order terminated the

wardship status and exclusive jurisdiction over Michelle. When the Tribal Court returned physical custody of Michelle to her mother, it specifically ordered her to raise the child in her home and complete a home study and evaluation so that:

> . . . the Court will be fully advised in making any further orders it deems necessary.

The language of the order clearly shows the Tribal Court sought to maintain exclusive jurisdiction over the welfare of Michelle notwithstanding the residence or domicile of the child. Although the Tribal Court granted physical custody to Oliviane, Michelle continued to remain a ward of the Tribal Court. There is no other reasonable explanation for the words "so that the Court will be fully advised in making any further orders . . ." Such a judicial award of custody of a child is not final, but is subject to the continuing control and jurisdiction of the court. Matter of B.T. (1986), 223 Mont. 287, 289, 725 P.2d 230, 231.

The Tribal Court has exclusive jurisdiction pursuant to 25 U.S.C. § 1911(a) because the minor child is a ward of the Tribal Court. Nevertheless, the District Court found that it could accept jurisdiction pursuant to 25 U.S.C. § 1911(b) of ICWA, as follows:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such Tribe. (Emphasis by the District Court.)

Section 1911(b) is not applicable in this case because § 1911(a) provides that the Tribal Court shall retain exclusive

jurisdiction. It was error on the part of the District Court to determine that Montana had concurrent jurisdiction over Michelle. The Tribal Court found her a ward of the Tribal Court and this wardship has not been terminated by any judicial proceedings in the Tribal Court.

Further support for vesting exclusive jurisdiction in the Tribal Court can be found in the Tribal Juvenile Code. Jurisdiction of the Tribal Court is found at § 42.1 of the Tribal Juvenile Code, which states:

> The Juvenile Court shall have exclusive original jurisdiction over proceedings in which the child is to be adjudicated to be neglected, in need of supervision, or delinquent, proceedings for the termination of parental rights, and proceedings for the adoption of a child.

Furthermore, § 42.4 of the Juvenile Code provides the following:

> Jurisdiction obtained by the Juvenile Court shall be retained by the Juvenile Court until a child becomes 18 years of age, unless terminated prior thereto.

The very word "retained" in the statute connotes continuation of jurisdiction. Continuing jurisdiction results in continuing wardship "until the child becomes 18 years of age, unless terminated prior thereto." Thus, as long as the court has continuing authority over the child, the child continues to be a ward of the court. The ICWA, 25 U.S.C. 1911(a), dictates exclusive jurisdiction where a child is a ward of the Tribal Court. Michelle became a ward of the Tribal Court when Oliviane came before the Tribal Court on her petition to revoke the Colorado adoption. Therefore, the Montana District Court erroneously concluded that it has concurrent jurisdiction.

The Tribal Court order of October 23, 1987 was issued pursuant to a hearing on a motion by Oliviane to return

custody to her. She did not request the Tribal Court, pursuant to § 42.4 of the Tribal Juvenile Code, to terminate its jurisdiction or request that the wardship status be ended. The exclusive jurisdiction under § 1911(a) by the Tribal Court over the child continued while the Tribal Court granted custody to the mother. The only issue addressed at the October, 1987 hearing was whether custody of the child should remain with Tribal Social Services or be returned to the natural mother.

Respondent argues that wardship terminated pursuant to § 47.5 of the Tribe's Juvenile Code. This section, however, merely addresses custody orders, and not Tribal Court jurisdiction. While the Tribal Court may have violated the custody provisions as set forth in § 47.5 of the Tribal Juvenile Code, jurisdiction still remains exclusively with the Tribal Court.

The Collins' argue that we should consider the bonding between themselves and Michelle in reaching this decision. The Collins are correct in their assertions that a family bond has developed, and a separation at this point would cause considerable pain. However, the best interest of Michelle is not a question for this Court to decide. The sole issue under consideration by this Court is whether the Tribal Court has exclusive jurisdiction under 25 U.S.C. § 1911(a) of the ICWA. Clearly the evidence dictates granting exclusive jurisdiction to the Tribal Court. The White Mountain Apache Tribal Court has the exclusive right to determine the fate of Michelle. We are fully confident the Tribal Court will consider the best interest of all parties in making its adoption determination.

We reverse the order of the District Court asserting concurrent jurisdiction over the Indian child, and remand

this case for further proceedings consistent with this Opinion.

_John C. Sheehy_
Justice

We Concur:

_S. A. Turnage_
Chief Justice

_William E. Hunt Sr._

_R. C. McDonough_

Justices

Justice Fred J. Weber specially concurs as follows:

I join in the holding of the majority opinion in view of the recent Choctaw holding of the United States Supreme Court. Although I have strong reservations about the majority's analysis, and tend to join the dissent on the wardship theory, I conclude we must concede jurisdiction to the tribal court under Choctaw. I express two concerns.

First, I am shocked at the Tribe's apparent disregard of the due process rights of the parent in the early stages of the controversy. The majority concludes that the child became a ward of the tribal court on May 30, 1985. This was accomplished with virtually no recognition of the due process rights of the mother. The Tribe's wardship appears to have been based on nothing more than its own stated claim. In Montana, any comparable restriction of parental rights can be done only with careful regard for the due process rights of the parents. Also shocking to me is the apparent ease with which the Tribe now argues against the desire of the mother, one of its own tribal members. It is ironic that the attorneys for the Tribe who have fought for many years for the protection of the interests of tribal members, now come all the way to Montana to argue so eloquently in direct opposition to this Indian mother. Who is left to represent

14

the rights of the individual Indian mother when she is so abandoned by her Tribe?

Second, I am concerned with the effect of the <u>Choctaw</u> holding. In <u>Choctaw</u>, a father and mother went 200 miles off the reservation in order to give birth to twins, and promptly made adoption arrangements for the twins with a non-Indian couple. The Supreme Court concluded that the tribal court had exclusive jurisdiction to determine the custody of these children. Noting the policy furthered by the ICWA, which is in part to protect the interests of the Indian community in retaining its children within its society, the court concluded that tribal jurisdiction could not be defeated by the parents' deliberate attempt to make a decision regarding their own children's custody. This holding indicates the interests of the Tribe now are superior to the interests of the parents. The dissenting judges in <u>Choctaw</u> pointed out that it was questionable whether Congress intended to deprive Indian parents of their wishes in regard to the placement of their children. Parental rights are among the most significant rights granted to any human being. The <u>Choctaw</u> decision is incredible in light of its apparent elimination of certain parental rights in favor of tribal rights.

Justice

15

Justice John Conway Harrison dissenting.

I dissent from the result of the majority opinion. This cause should be affirmed in accordance with the order of District Court Judge Joseph Gary, dated October 13, 1988. In endeavoring to do justice to this four-and-one-half-year-old child born in the State of Montana, Judge Gary noted in his memorandum that she is entitled to protection of the laws of Montana. Those protections through statutory and case law of this State are carefully directed to the ultimate "welfare of the child in adoption proceedings." This Court has noted in a number of cases where Indian children are involved that we consider the welfare of the child even though Congress, in its passage of the Indian Child Welfare Act of 1978, has put the welfare of the tribe over the best interest of a child.

Judge Gary carefully directed his decision considering the multiple bodies of crisscrossing law including Montana statutes, the Uniform Child Custody Jurisdiction Act (UCCJA), the Federal Indian Child Welfare Act (ICWA), the White Mountain Apache Tribe Jurisdiction Code, and the United States Constitution. He noted that in the four-and-one-half-years of her short lifetime, this child has lived one year and several months with the Collins family in Colorado, the family trying to adopt her; part of one year with her natural mother on the Apache Indian Reservation; one year and several months with a tribal foster family; six months with her natural mother and her mother's adoptive parents in Montana; and

16

then back to the Collins family in Colorado. He further noted that "surely such an undesirable situation would be viewed by any court or any culture as intolerable." For that reason, it was the District Court's paramount desire to provide some stability in the child's life once and for all.

In an over twenty page written order, which accompanied his opinion, the District Court carefully considered both the question of "retained jurisdiction" by the tribe and the question of whether Michelle shall remain a "ward" of the Apache court. The District Court noted that from tribal laws and procedures, the most revealing information gleaned from the orders of that court is that it put an emphasis on the certified order lodging "exclusive jurisdiction under the ICWA on the basis of domicile on the reservation." He further noted that the juvenile court stated that there is exclusive jurisdiction "[a]s the mother is domiciled on the reservation and therefore her child is likewise considered by this court to be domiciled therein." In addition the court noted that under the federal law "concurrent jurisdiction is a concept that is embraced in the Indian Child Welfare Act. That Act is replete with references to State courts and procedures required by the same for the adoption of Indian children." Further the court noted that the Supreme Court of Kansas, in In re Matter of Adoption of Baby Boy L (Kan. 1982), 643 P.2d 168, exhaustively studied the ICWA. While the facts of Baby Boy L are different than those in the case before Judge Gary the principles are applicable. The purpose of the ICWA set forth in 25 U.S.C. § 1902, provides that

the purpose is to:

> promote the stability and the security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family services programs.

In Baby Boy L, the Kansas court held that since the child was never a member of the Indian family on the reservation, the ICWA was not applicable.

Baby Boy L was then considered by the Tenth Circuit Court of Appeals in the Kiowa Tribe of Oklahoma v. Lewis (1985), 777 F.2d 587 at 592, where the Court of Appeals, in interpreting 25 U.S.C. § 1914, said as follows:

> Congress intended the ICWA to set minimum standards and procedural safeguards for state child custody proceedings. [Citations omitted.] In setting such standards, Congress evidently believed that an Indian child's tribe should be involved in the process even when the proceedings are in state courts rather than tribal courts. [Citations omitted.] Thus Congress clearly realized that state courts would continue to resolve some cases of Indian child custody. Section 1911(c) expressly gives the child's Indian tribe the right to intervene in state court proceedings involving the child's custody. We cannot read § 1914's reference to "any court of competent jurisdiction" as the type of clear and manifest authorization that federal courts need before they upset the ordinary principles of federal-state comity embodied in 28 U.S.C. § 1738 and the Full Faith and Credit Clause. It seems rather to state simply where such actions may initially be brought. Regardless of whether we agree with the Kansas Supreme Court's construction of the ICWA, here we must honor the judgment it has

18

rendered on the subject.

Judge Gary goes further in his memorandum and adopts the Kansas court's position that since the child in question is not domiciled within the reservation, it is not necessary to transfer the proceedings to the jurisdiction of the tribe if opposed by either parent. In this case, the mother of the child is objecting to the transfer of the custody to the Indian tribe.

Exclusive jurisdiction is mandated only when the Indian child resides on or is domiciled within the reservation, or when an Indian child is a ward of the court. I would agree with Judge Gary and give full faith and credit to the declaration of the White Mountain Apache court of their continuing jurisdiction, but would agree with his finding that Michelle is neither a ward nor a resident of the tribe at the time of the order and that the adoption proceedings should proceed and be approved for the Collins family.

_John Conway Harrison_
Justice

Justice Diane G. Barz joins in the foregoing dissent of Justice John Conway Harrison.

_Diane G. Barz_
Justice

19