IN RE INTEREST OF DAKOTA L. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
CHRISTINE T., APPELLANT.
712 N.W.2d 583

Filed March 14, 2006. No. A-05-385.

Craig H. Borlin for appellant.

Stuart J. Dornan, Douglas County Attorney, and Renee L. Mathias for appellee.

INBODY, Chief Judge, and SIEVERS and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Christine T. appeals the order by the separate juvenile court of Douglas County adjudicating her five minor children under Neb.

Rev. Stat. § 43-247(3)(a) (Reissue 2004). Christine claims five separate errors with respect to the adjudication order; specifically, that (1) the court erred in assuming concurrent jurisdiction with the tribal court of the Omaha Tribe of Nebraska (Omaha Tribe); (2) the State's petition failed to meet the pleading requirements of the Indian Child Welfare Act (ICWA), thus infringing on Christine's due process rights; (3) insufficient notice was sent to the tribal court that the children had been removed from the family residence by the Nebraska Department of Health and Human Services (DHHS); (4) the court erred in finding the children to be within the meaning of § 43-247(3)(a); and (5) the court erred in finding that it was in the children's best interests to remain placed outside the home. For the reasons set forth herein, we find that jurisdiction was proper, but that the court erred when it proceeded under a petition which lacked ICWA pleading requirements. In addition, there is insufficient evidence that notice to the tribe was proper. Thus, the order of adjudication is reversed and the cause is remanded to the juvenile court, which we direct to proceed under an appropriate ICWA petition and to properly serve notice to the tribe.

## BACKGROUND

This case involves five children born to Christine: Chastidy T. (born January 18, 1994), Dakota L. (born July 23, 1995), Darius L. (born December 10, 1996), Corice L. (born January 12, 1999), and Mary L. (born October 26, 2002). All five children are enrolled members of the Omaha Tribe in Macy, Nebraska. The family has had numerous contacts with DHHS and apparently has had some contact with Child Protective Services (CPS) in Macy as well, though the extent of the family's involvement with CPS and the tribal court was not clear from the record.

The family's involvement with DHHS with respect to this case began in December 2004. Specifically, on December 17, 2004, the State filed a petition in the separate juvenile court of Douglas County, alleging that the five children were within the meaning of § 43-247(3)(a) in that they lacked proper parental care by reason of the faults or habits of Christine. The petition included the following allegations: (1) that on or about December 15, 2004, the family home was without necessary

food, bedding, or pillows for the children; (2) that Christine had failed to provide the necessary financial or emotional support for the children's well-being; (3) that Christine had failed to assist the children in obtaining an education as required by law; (4) that Christine had failed to take advantage of services offered by DHHS and other providers to assist her children; and (5) that because of the truth of these allegations, the children were at risk for harm.

In addition to the petition alleging that the children were within the meaning of § 43-247(3)(a), the State also filed a motion for temporary custody on December 17, 2004, requesting that immediate temporary custody of all five children be placed with DHHS. The motion for temporary custody was based on an "Affidavit for Removal From Parental Home" by Jessyca Vandercoy, an initial assessment worker with DHHS. Because it is not necessary to our resolution of this case, we do not include the detailed information concerning the alleged need for removal of the children at this juncture. The affidavit indicated that according to DHHS documentation, all five children had been in numerous placements and had been removed from Christine's care several times.

Vandercoy's affidavit also included information on the family's involvement with the Omaha Tribe. Vandercoy stated:

> All five children are under the care and custody of the Tribal Court in Macy, Nebraska. The Tribal Court has been involved with this family since October 1998. The family has not been provided support services since 2003. On December 15, 2004 this worker spoke with [a] CPS [worker] in Macy. [The worker] stated that [CPS was] unable to provide services to this family because of the distance. She stated that she believes [the] Douglas County Court should have jurisdiction as the services have not [been] and are no[t] being provided to this family.

Vandercoy concluded that "[t]he Tribal Court and CPS in Macy have been unable to provide services to this family, despite removing the children over and over again," and that for this and several other reasons, the children continued to be at risk for harm and should be placed in protective custody.

On December 17, 2004, the court ordered that temporary custody of the five children be given to DHHS, with placement to exclude the home of Christine.

On December 22, 2004, a first appearance and detention/protective custody hearing was held before the court. At the start of the hearing, the court was informed by the State that "the [ICWA] will apply to this matter based on previous court intervention with this family." The court asked whether the children were actually enrolled in a tribe or eligible for enrollment, and Christine responded that the children were enrolled in the Omaha Tribe. Christine did not resist the continued detention of her children, and Christine's attorney noted that the State had agreed to provide some services to Christine, including assistance to complete a GED program, parenting classes, and the help of a family support worker. Christine entered a denial of the allegations in the petition and was told the possible consequences of her involvement with the juvenile court and informed of her rights, including the enhanced evidentiary standard of the ICWA. In its verbal findings at the conclusion of the hearing, the court stated, among other things, that the ICWA applied, that the children were enrolled members of the Omaha Tribe, and that notice of the proceedings was to be given to the Omaha Tribe. In its written detention hearing order, the court stated that it had been advised that the ICWA applied in that the children were enrolled members of the Omaha Tribe. The court ordered the continued detention of the children by DHHS.

On February 4, 2005, the State sent an "ICWA Notice" to an ICWA specialist with the Omaha Tribe. The notice indicated that a petition had been filed under § 43-247(3)(a) for the five children, alleging that they were within the jurisdiction of the separate juvenile court, and further stated that the children might be enrolled in the tribe, "thus invoking the [ICWA]." The notice included several other rights of the tribe, such as the right to intervene and the right to petition the court to transfer the proceeding to the tribal court. The next hearing date was also provided in the notice.

On February 7, 2005, the State filed an amended petition with the court. The amended petition was similar to the first petition in

its allegations, but added ICWA pleading language. Specifically, the amended petition alleged that the five children were enrolled or were eligible for enrollment in the Omaha Tribe and that pursuant to Neb. Rev. Stat. § 43-1505(4) (Reissue 2004), active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the family, but that those efforts had been unsuccessful.

The adjudication hearing was held on February 28 and March 1, 2005. Christine was not present when court began, and the court denied her attorney's motion to continue. The court decided to proceed on the original petition, noting that while the amended petition included language about the applicability of the ICWA, the court at the detention hearing had advised Christine that both the ICWA and its enhanced standard of proof applied, so that Christine had full notice that the ICWA was applicable. Christine's attorney noted that Christine had not been served with the State's February 4, 2005, ICWA notice. The attorney for the children's father, present for a first appearance of the father in these proceedings, stated that Christine and the father would like the case transferred to the Omaha Tribe "as has been done before" and that both parents must receive formal notice that the ICWA is applicable, even though the court had made a finding that the ICWA applied. The court responded that notice had been served on the tribe and that the court had discussed the matter with a prosecutor for the tribe, who said that he was aware of the hearing but would not be able to attend due to his involvement with another adjudication. The court noted the father's attorney's comments and stated that they were probably well placed, but that the father was not affected at that point by any lack of formal notice. The father was excused for an ongoing trial proceeding in a different case, and the hearing began on adjudication under the original petition.

During testimony of the first witness, Christine appeared in court. The court asked the State whether it wanted to proceed on the amended petition, and the State responded in the affirmative. Christine's attorney objected, stating that if the case proceeded on the amended petition, he would ask that Christine be arraigned that day on the amended petition and that he be

allowed time to meet with Christine to discuss the amended petition. The court stated that operating under the amended petition would not really change anything, because Christine had been served with a copy of the amended petition, to which statement Christine's attorney responded that he had not had time to discuss the amended petition with Christine to see whether she had any questions. The court then proceeded with the adjudication hearing on the original petition, and the testimony of the first witness continued.

That first witness, called by the State, was Vandercoy, the DHHS initial assessment worker who had written the affidavit supporting the motion for temporary custody. Vandercoy's verbal testimony was similar to the facts provided in her affidavit, albeit with more elaboration. Vandercoy also testified to the family's involvement with the Omaha Tribe. Vandercoy stated that as of December 16, 2004, the children were "in the custody of the Tribe, so they were State wards at the time." Upon cross-examination of Vandercoy by Christine's attorney, a discussion of the tribe's involvement with the family occurred, apparently for the purpose of demonstrating that in fact the tribe, not Christine, was primarily responsible for the children's well-being and that thus, Christine was not at fault if she had failed to provide for the children. Vandercoy stated that the Omaha Tribe originally became involved with the family in 1998. She was then asked when the tribe became involved in 2004, and she replied that the documentation from the tribe was confusing, but that Chastidy had been in the custody of the tribe continuously since 1998 and the other children also had been in the care and custody of the tribe continuously, though it was unclear whether the tribe had closed their case and then reopened it.

Vandercoy was then asked a series of specific questions relating to the family's involvement with the tribe. Vandercoy was asked whether the tribe had actually assumed jurisdiction of the children, and she responded yes. Vandercoy was asked whether the children were under the care and custody of the tribe at some point between her receipt of an initial report regarding the children in September 2004 and the time of the hearing, and she again responded yes. Later in her testimony, Vandercoy was

asked whether, "as far as legal jurisdiction goes, the children were in the care and control of the Omaha Tribe" on December 15 and 16, 2004, and she responded yes. Asked to elaborate with respect to the tribe's providing services to the family, Vandercoy responded that the tribe had recently provided the family a food voucher and a rent voucher, but that there were no family support services involved. She stated that no worker associated with the tribe had been out to visit the family since September, but that the tribe had had plans for a worker to come out to visit the family on December 21.

Christine's attorney continued to ask questions on the issue of Christine's responsibility for the care of her children in light of the tribe's involvement. Vandercoy responded, "The tribe had been involved and didn't — and stayed involved, so there was an assessment made by someone there that there was continued concern for these children; otherwise, they would have closed the case."

During cross-examination by the guardian ad litem, Vandercoy stated that she had tried to make contact with the tribe around the time of DHHS' December 2004 removal of the children from the family home. Vandercoy said that she left messages for a CPS worker in Macy on December 13, 14, and 15 because "we had had concerns, and the children were in the jurisdiction of the Tribe," but that she did not receive a callback until the children had already been placed into protective custody, on December 17. Vandercoy testified that she spoke with the family's tribal case manager on December 17. Vandercoy further stated that workers for the tribe had explained that the distance was too great for them to be able to provide supervision of the situation or provide services to the family.

Tayla Dickey, a DHHS protection and safety worker assigned to the case, also testified as to the family's involvement with the tribe. On cross-examination by the guardian ad litem, Dickey was asked whether the children had been in the custody of DHHS or in the custody of the Omaha Tribe in September 2004, when Vandercoy received the above-mentioned initial report of concern. Dickey responded that it was her understanding that they had been under the custody of the Omaha Tribe during that time. On recross-examination by Christine's attorney, Dickey

was asked whether she knew of any "court order from the Omaha Tribe . . . giving Christin[e] any direction as to what she's supposed to do." Dickey responded that she did not and that she did not have any order from the Omaha Tribe in the family's case file.

Christine testified about her involvement with the Omaha Tribe as well. Her attorney initiated the following line of questioning:

Q. And have you had an action or a matter in the Omaha Tribal Court since October 1st of 2004?

A. Have I had — excuse me?

Q. Has there been a matter concerning the children in the Omaha Tribal Court since October of 2004?

A. No. Like explain it to me.

Q. When you were in this court previously in September —

A. Uh-huh.

Q. — was the matter transferred to the Omaha Tribal Court —

A. Yes.

Q. — at that time?

A. Yes.

Q. And was that approximately October 1st of 2004?

A. That was back in January of 2004.

Q. Have you been continuously under the jurisdiction of the Omaha Tribal Court during the year of 2004, then?

A. Yes.

Q. Have you appeared before the Omaha Tribal Court during 2004?

A. No, I have not.

Q. Have you been issued any orders concerning the children out of the Omaha Tribal Court during 2004?

A. No, just find [sic] housing.

Q. Do you have a caseworker through the Omaha Tribal Court?

A. [Yes].

Q. And when was the last time that you met with [her]?

A. Back in November.

Q. In the time prior to November of 2004, when did you meet with [her]?

A. Other than that, I haven't met with her, but I've talked to her.

Christine gave further confirmation that the tribe had intervened in a proceeding in January 2004, and she testified that the children had been taken to Macy in February and returned to her in May. Chastidy was later placed in a shelter in Macy and returned to live with Christine on November 29. Christine stated that she had not received services from the tribe since August.

Additional evidence was presented regarding the allegations in the petition concerning Christine's care of the children, which evidence we need not detail here. At the conclusion of the hearing, the court made the following observation:

First of all, [I] remind everyone that we are working off the original petition which was filed on December 17, 2004 and that the Court has made a finding that due to the application of the [ICWA], even to this original petition, that enhanced standards of proof do apply to the Court's findings which will be made in just a minute or two.

The court then adjudicated the children under § 43-247(3)(a). In its written adjudication order, the court found that the ICWA applied to these proceedings with the "corresponding enhanced burdens of proof." The court found the following allegations of the petition to be true, by clear and convincing evidence: (1) that on or about December 15, 2004, the family home was without necessary food, bedding, or pillows for the children; (2) that Christine had failed to provide the necessary financial or emotional support for the children's well-being; and (3) that because of the truth of these allegations, the children were at risk for harm. The court dismissed two remaining allegations due to a lack of proof by clear and convincing evidence, namely that Christine had failed to assist the children in obtaining an education as required by law and that she had failed to take advantage of services offered by DHHS and other providers to assist the children. The court also found that it would be contrary to the health and safety of the children for them to be returned home and that it was in the best interests of the children to remain in the temporary custody of DHHS for appropriate care

and placement. No specific findings under the ICWA were made. Christine appeals from this adjudication order.

## ASSIGNMENTS OF ERROR

On appeal, Christine assigns the following errors: (1) that the juvenile court assumed concurrent jurisdiction of the case with the tribal court when it had no right to do so; (2) that the State's petition failed to meet the pleading requirements of the ICWA, infringing on Christine's due process rights; (3) that insufficient notice was sent to the tribal court that the children had been removed from the family residence by DHHS; (4) that the juvenile court found the children to be within the meaning of § 43-247(3)(a); and (5) that the juvenile court found that it was in the children's best interests to remain placed outside the home.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005). In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.* A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id.*

## ANALYSIS

### Jurisdiction

Christine's first assignment of error is that the separate juvenile court erred when it assumed concurrent jurisdiction over the children with the tribal court. Although the issue of whether the tribal court had exclusive jurisdiction was not raised at any point in the trial proceedings, the issue of subject matter jurisdiction can be raised at any time. See *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002) (lack of subject matter jurisdiction may be raised at any time by any party or by court sua sponte). In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Brittany C. et al., supra.*

 Christine claims that the tribal court had exclusive jurisdiction of the children under 25 U.S.C. § 1911(a) (2000) of the federal ICWA and under Neb. Rev. Stat. § 43-1504(1) (Reissue 2004) of the Nebraska ICWA. Section 43-1504(1) of the Nebraska ICWA provides as follows:

> An Indian tribe shall have jurisdiction exclusive as to this state over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the state by existing federal law. When an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

Concurrent jurisdiction is addressed in the federal ICWA at § 1911(b) and in the Nebraska ICWA at § 43-1504(2), the latter of which reads as follows:

> In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, except that such transfer shall be subject to declination by the tribal court of such tribe.

From the language of § 43-1504(1), it is clear that in a child custody proceeding involving an Indian child, the tribe has exclusive jurisdiction in two instances: (1) when the Indian child resides or is domiciled within the reservation, except where jurisdiction is otherwise vested in the state by existing federal law, and (2) when the Indian child is a ward of a tribal court, notwithstanding the residence or domicile of the child.

At the time of removal, Christine's children were neither residing nor domiciled on the reservation, making the first instance enumerated above inapplicable to the present case. However, Christine argues that the second instance is applicable because the children were in fact "wards" of the tribal court. While jurisdictional issues under other § 43-1504 subsections have been discussed by Nebraska courts (see, e.g., *In re Interest of Brittany C.*

*et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005), and *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992) (involving tribe's motion to transfer jurisdiction to tribal court under § 43-1504(2))), exclusive jurisdiction under § 43-1504(1) appears to be an issue of first impression in Nebraska.

Other state courts have addressed a tribal court's exclusive jurisdiction under the federal ICWA statute § 1911(a), although in different factual situations. The Supreme Court of Indiana addressed the issue in *Matter of Adoption of T.R.M.*, 525 N.E.2d 298 (Ind. 1988). At issue in that case was the validity of an adoption decree granted in a state trial court. Before the adoption decree was granted, a tribal court had filed a motion to transfer the case, attaching a copy of an order of wardship of the child which had been entered 1 day before the adoptive parents filed their petition for adoption. The state trial court denied the tribal court's motion to transfer and granted the adoption. On appeal, the Indiana Supreme Court first found that the ICWA was inapplicable, for reasons unrelated to those at issue in the present case; but the court went on to state that even if the ICWA was applicable, the tribal court had not enacted a valid wardship of the child, and therefore, exclusive jurisdiction could not exist under § 1911(a) by reason of the child's being a ward of the tribal court.

Exclusive jurisdiction under § 1911(a) was also addressed by the Supreme Court of Montana, in *Matter of M.R.D.B.*, 241 Mont. 455, 787 P.2d 1219 (1990). In that case, an Indian mother put her child up for adoption and an adoption petition was filed in a state trial court. The tribal court was given notice of the adoption proceedings and filed a motion to dismiss the petition for lack of jurisdiction. The state trial court found that the child was not a ward of the tribal court and that concurrent jurisdiction existed under § 1911(b). On appeal, the Supreme Court of Montana found that the child was in fact a ward of the tribal court because the child's mother had previously submitted herself to the jurisdiction of the tribal court by petitioning the court to take over the care and custody of her child, insofar as an infant becomes such a ward when its parents submit themselves to the jurisdiction of a tribal court. In addition, the supreme court noted that after granting the mother's petition and taking jurisdiction over the child, the tribal court had repeatedly referred to the child as a "ward" in its

orders. Therefore, the supreme court reasoned, because the child was a ward of the tribal court, the tribal court had exclusive jurisdiction under § 1911(a) and it was error on the part of the state trial court to determine that the state had concurrent jurisdiction over the child.

Even though these cases involved adoption proceedings rather than a juvenile adjudication, which is the issue in the present case, the jurisdictional question is the same. The tribal court in this case would have had exclusive jurisdiction over the children if they were in fact wards of the tribal court. In the two cases discussed above, the issue of exclusive jurisdiction was raised by the tribal court, by the motions to transfer or to dismiss. Those cases were resolved by virtue of the existence (or lack) of evidence concerning a valid wardship.

In this case, no direct evidence of wardship exists. Neither the tribe nor the tribal court attempted to intervene in the proceedings. Christine did not petition the juvenile court to transfer the proceeding to the tribe pursuant to § 43-1504(2). The testimonial evidence given at trial was inconclusive as to whether the children were currently wards of the tribal court. There was no documentary evidence provided which demonstrated that the children were wards of the tribal court. Because the record does not conclusively establish that the children were currently wards of a tribal court and because the children were not residing within the reservation of the tribe, we find no error in the juvenile court's exercise of jurisdiction over the children. This conclusion does not preclude intervention by the tribe at subsequent proceedings or presentation of further proof of the status of tribal court proceedings; nor do we intend by this conclusion to suggest how any subsequent motion to transfer jurisdiction should be determined.

### FAILURE TO MEET ICWA PLEADING REQUIREMENTS

Christine next contends that the State's petition failed to meet the pleading requirements of the ICWA and that such failure infringed on her due process rights. Two petitions for adjudication were filed in this case: an "original" petition and then, later, an "amended" petition. The original petition did not include any language concerning the ICWA, while the amended petition

included ICWA pleading language, specifically the language of § 43-1505(4). Section 43-1505(4) states that "active efforts" to prevent the breakup of the Indian family must be made when a "foster care placement" of an Indian child is involved. The exact text of § 43-1505(4) is as follows:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Christine claims that the juvenile court erred when it proceeded under the original petition, which had no ICWA language, instead of the amended petition, which included the § 43-1505(4) language. Although Christine references only § 43-1505(4), we note that neither the original petition nor the amended petition alleges facts with regard to § 43-1505(5), which provides:

> No foster care placement may be ordered in [an involuntary] proceeding [in a state court] in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

This court has addressed the issue of proper pleading under the ICWA once before in *In re Interest of Sabrienia B.*, 9 Neb. App. 888, 621 N.W.2d 836 (2001). In that termination of parental rights case, the State failed to include ICWA language in its motion for termination, even though all parties had stipulated previously that the child was Indian and that the ICWA would apply to any termination proceedings. The termination motion included general termination language under Neb. Rev. Stat. § 43-292 (Reissue 1998), but omitted specific ICWA language under § 43-1505(4) and (6). Again, § 43-1505(4) requires that "active efforts" be made to prevent the breakup of the Indian family, and § 43-1505(6) is similar to § 43-1505(5) above, requiring a demonstration that the continued custody of the child by the parent is likely to result in "serious emotional or physical damage" to the child in a termination of parental rights case. See *id.*

The mother in *In re Interest of Sabrienia B.* filed a demurrer to the termination motion, claiming that because ICWA language was not included in the State's motion, the allegations in the motion failed to " 'articulate an essential element to sustain a finding and Order of termination.' " 9 Neb. App. at 890, 621 N.W.2d at 839. The demurrer was denied, and the mother's parental rights were terminated. In its termination order, the juvenile court concluded that the State had proved the requirements of the Nebraska ICWA's § 43-1505(4) and (6), even though the ICWA language did not appear in the motion. The mother appealed from the termination order, claiming that the court erred in overruling her demurrer and in finding that the State's motion stated a cause of action.

On appeal, the State argued that by pleading general termination grounds in its motion, it had satisfactorily pled the ICWA requirements as well. Specifically, the State argued that it had addressed the ICWA's "active efforts" requirement in § 43-1505(4) when it pled in its motion that "reasonable efforts" to preserve and reunify the family pursuant to § 43-292(6) had failed to correct the conditions leading to the determination that the child lacked proper parental care. In addition, the State argued that the ICWA's requirement of demonstrating that continued custody by the parent or Indian custodian is likely to result in "serious emotional or physical damage" to the child, found in § 43-1505(6), was adequately pled when the State pled under § 43-292 that termination was in the "best interests of the child."

On appeal, this court held that the " 'active efforts' " requirement of the Nebraska ICWA's § 43-1505(4) is *separate and distinct from* the 'reasonable efforts' provision of § 43-292(6)," and thus upheld the mother's contention that the State must plead sufficiently to put the ICWA and § 43-1505 in issue. (Emphasis supplied.) *In re Interest of Sabrienia B.*, 9 Neb. App. at 895, 621 N.W.2d at 842. We found that the State's motion failed to allege facts sufficient to constitute an action for termination of parental rights under the Nebraska ICWA. The facts that the applicability of the ICWA had been discussed verbally in court and that the court specifically found in its order that the State had adequately proved the relevant ICWA requirements did not rectify the failure of the motion to include the relevant

ICWA language. We reversed the order of termination, and on remand, we granted the State leave to amend the motion.

Applying the rationale of *In re Interest of Sabrienia B.*, we conclude that in an action for adjudication of Indian children, it is necessary to plead facts under the ICWA. In this case, while the State did file an amended petition including allegations required under the ICWA, the court did not adjudicate the children under the amended petition. It was error for the court to proceed on the adjudication under the original petition, which did not allege facts under the ICWA. This is so despite the fact that Christine had been served with the amended petition and had been notified in court that the ICWA was applicable.

█ Further, upon the filing of the amended petition, the preceding petition ceased to have any function. See *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996) (amended pleading supersedes original pleading; after amendment, original pleading ceases to perform any office as pleading). We conclude that it was also error for the juvenile court to proceed under the original petition because that pleading ceased to function upon the filing of the amended petition.

Accordingly, we reverse the order of adjudication and remand the cause to the juvenile court for an adjudication under an appropriate amended petition, with directions to the court to make specific findings as required by § 43-1505.

## NOTICE TO TRIBE

Christine also claims that insufficient notice was given to the tribal court that the children had been removed from the family residence by DHHS, resulting in the tribal court's having insufficient notice to exercise its exclusive jurisdiction over its wards.

Notice requirements in a case involving the ICWA can be found at § 43-1505(1), which states as follows:

> In any involuntary proceeding in a state court, when the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by certified or registered mail with return receipt requested, of the pending proceedings and of their right of

intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the secretary in like manner, who may provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the secretary. The parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

This is an involuntary proceeding in a state court involving the foster care placement of Indian children. Therefore, § 43-1505(1) is applicable, and to be proper, the notice given to the tribe must have followed the specific requirements of that subsection. Restated, the subsection requires that notice be sent (1) to the "Indian child's tribe," *id.*; (2) by certified or registered mail with return receipt requested; (3) with notice of the pending proceedings; and (4) with notice of the tribe's right of intervention. In addition, the subsection states (5) that no foster care placement or termination of parental rights proceeding shall be held until at least 10 days after receipt of notice by the tribe and (6) that the tribe may have an additional 20 days to prepare for the proceeding, if requested.

Correspondingly in part, the ICWA notice in the instant case (1) was sent to the tribe on February 4, 2005, (2) was sent by certified mail with return receipt requested, (3) declared that a petition had been filed under § 43-247(3)(a) concerning the children, (4) stated the tribe's right of intervention, (5) stated that no foster care or termination proceeding shall take place until at least 10 days after receipt of the notice, and (6) added that the tribe could have an additional 20 days to prepare, if requested. Although Christine has not stated on appeal the specific requirements in § 43-1505(1) with respect to which she found error, it appears that she is asserting error regarding the person to whom the notice was sent (requirement (1)) and regarding the tribe's not specifically being made aware that the children were already in a state foster care placement when the notice was sent (perhaps falling under requirement (3)).

First, Christine claims that the ICWA notice should have been sent to the tribal court of, rather than an "ICWA specialist" with, the Omaha Tribe. However, Christine cites no authority for this. The plain language of § 43-1505(1) provides that notice must be sent to the "Indian child's tribe." The statute makes no mention of sending notice to the "tribal court."

Nebraska courts have not addressed the issue of to whom specifically the notice should be sent when the statute directs that it be sent to the "Indian Child's tribe." The Supreme Court of Indiana, however, addressed this issue in a termination of parental rights case, when tribal notification was given via subpoenas served on two representatives of the Potawatomi Indian Nation. See *Matter of D.S.*, 577 N.E.2d 572 (Ind. 1991). In that case, the supreme court found that the record was not clear as to whether the notification directed to those two individuals complied with the notice requirements in a federal ICWA statute, 25 U.S.C. § 1912(a) (1988). That federal ICWA subsection, pertaining to notice, is similar to the Nebraska ICWA's corresponding notice subsection in that it states that notice should be served on the "Indian child's tribe." See, § 1912 (2000); § 43-1505(1).

The supreme court noted that the Bureau of Indian Affairs has published guidelines, regarding the notice requirements, which correspond to and supplement the requirements in § 1912(a). See Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979) (not codified). It further noted that the Bureau of Indian Affairs authorizes tribes to designate an agent for service of notice of child custody proceedings. See 25 C.F.R. § 23.12 (2005). The names and addresses of the designated agents are published in the Federal Register. The supreme court held that the record did not show that these two persons were the tribal agents designated and entitled to receive service of notice, so the case was remanded to the trial court to serve notice to the tribe in a manner which conformed with the ICWA.

In this case, notice was given by a letter mailed to a named "ICWA specialist" with the Omaha Tribe. From the record in this case, it is not clear whether notification directed to the ICWA specialist complied with the ICWA's notice requirements. Because we are remanding this matter for a new adjudication

hearing, we direct that notice be given to the tribe as required by the ICWA.

Second, Christine appears to argue that the notice sent to the tribe was insufficient because it failed to notify the tribe that the children were in a state foster care placement at the time the notice was sent. However, Christine points to no specific language in § 43-1505(1) that requires this kind of information to be included in the notice. In fact, the plain language of § 43-1505(1) does not require the child's current placement to be included in the notice. The only part of § 43-1505(1) which even remotely addresses this information is the requirement that the tribe be notified of the "pending proceedings." In this case, the ICWA notice stated that the addressee was "hereby notified that there has been filed in the Separate Juvenile Court for Douglas County, Nebraska, a Petition and Order alleging that [the children] are [children] as defined in Neb.Rev.Stat. §43-247(3)(a) and alleging they are within the jurisdiction of the Court." This satisfied the requirement that the tribe be given notice of the "pending proceedings." Furthermore, an inspection of the ICWA notice in this case shows that the tribe was provided some information regarding the children's state foster care placement, as the notice stated that several documents were attached, including the "Affidavit for Removal From Parental Home," motion for temporary custody, and order for immediate custody. Thus, even though explicit notice that the children may have been in a state foster care placement at the time the ICWA notice was sent was not required, the tribe should have been on notice as to that fact.

## CONCLUSION

We find that jurisdiction in this case was proper. However, it was error for the juvenile court to adjudicate the children under the original petition, as opposed to the amended petition. In addition, there is insufficient evidence that notice to the tribe was proper. Accordingly, we reverse the order of adjudication and remand the cause to the juvenile court for an adjudication under an appropriate ICWA petition, with notice to be served to the Omaha Tribe which conforms to the ICWA. Because we remand the cause to the juvenile court for the foregoing reasons, we decline to address Christine's additional assignments of error.

REVERSED AND REMANDED WITH DIRECTIONS.