IN RE INTEREST OF ZACHARY W. AND ALYSSA W., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. JENNIFER W., APPELLANT.
526 N.W.2d 233

Filed December 27, 1994.    No. A-94-284.

Christina Thornton, of Legal Aid Society, Inc., for appellant.

No appearance for appellee.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

On January 3, 1994, a deputy county attorney for Douglas County filed a petition alleging that Zachary W. and Alyssa W., who were minor children aged 3 and 1 at the time, came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) because they lacked proper parental care by reason of the fault or habits of their mother, Jennifer W. On January 4, the State filed a motion for temporary custody, and the court found that the need for placement and detention existed and ordered the Nebraska Department of Social Services (DSS) to retain custody of the children. The court also set a detention hearing on that matter for January 14. This hearing date was later continued, and the detention hearing was held February 10.

On February 4, Florence G. filed a "Motion for Intervention" wherein she alleged that she is the grandmother of the children and that she is a proper and fit person to have the temporary custody and/or placement of said children. She requested, if the court did not place the children with her, that "she be granted visitation with said minor children in compliance with the laws of the State of Nebraska in reference to these matters." The February 11 journal of the detention hearing contains a paragraph which states, "Motion to Intervene was made by Vincent Sutera [the grandmother's attorney] on behalf of the children's grandmother. The motion was taken under advisement by the Court. Mr. Sutera was then excused from the proceedings."

The remainder of the same journal described the proceedings at the detention hearing and included the findings and the order of the court issued as a result of that hearing. The court found that reasonable efforts to prevent the need to remove the

children from the home had been made and that it would be contrary to the best interests of the children to return them to the parental home. The children were placed in the temporary custody of DSS. DSS was also authorized to consent to medical care and directed to furnish monthly reports to the court and attorneys. Jennifer was granted reasonable supervised visitation, ordered to contribute to the support of the children, and ordered under no circumstance to allow Pedro H., her former boyfriend, to be in the children's presence. The order was not appealed.

On February 17, 1994, the court entered and filed an order that contained no findings, but overruled the grandmother's motion to intervene, and ordered:

> [S]aid grandmother and stepgrandfather shall be granted visitation with said children as determined by the Nebraska Department of Social Services, AND IT IS SO ORDERED.
>
> IT IS FURTHER ORDERED that visitation by said grandmother and stepgrandfather shall in no way interfere with any case plan regarding the natural mother of said children.

The evidence adduced at the detention hearing shows that Jennifer was living with her boyfriend, Pedro, at the time DSS intervened on behalf of the children. The evidence shows that Pedro physically abused Jennifer, but does not show that he abused the children. The youth services unit of the Omaha police intervened after the mother took Alyssa to the hospital with burns on her feet and hands. The mother told the doctors at the hospital that the child was burned in the bathtub when her older sibling turned on the hot water while the mother's attention was distracted. Since the burns covered the entire area of the feet and hands to a certain height, but the child was not otherwise burned, the doctors were of the opinion that the burns were submersion burns and could not have happened in the way the mother claimed they happened. It appeared as though the child's feet and hands were forcibly immersed in extremely hot water. Other evidence of this event is unnecessary in view of the assignments of error contained in Jennifer's brief.

## ASSIGNMENTS OF ERROR

Jennifer appeals from the order entered February 17, 1994, and alleges that the juvenile court erred because (1) the grandparents do not fall within the meaning of the Nebraska grandparent visitation statutes, Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 1993), and (2) the court did not make any finding as to whether visitation would be in the best interests of the children.

We note that the application was filed by the grandmother, but the court allowed visitation to the grandparents, which includes Jennifer's stepfather. Because of our resolution of this appeal, this inconsistency is not material and will therefore be ignored.

## JURISDICTION

■ An appellate court has both the power and the duty to determine whether it has jurisdiction over the matter before it. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). The burden is particularly important where only the appellant has made an appearance in this court. Therefore, we will first consider whether this court has jurisdiction over this appeal.

■ Neb. Rev. Stat. § 43-2,126 (Reissue 1993) provides in significant part: "Any final order or judgment entered by a separate juvenile court may be appealed to the Court of Appeals. The appellate court shall conduct its review within the same time and in the same manner prescribed by law for review of an order or judgment of the district court . . . ." In the case *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), Justice Caporale analyzed the statutes regarding appeals from juvenile courts, and we shall not repeat his analysis in this opinion. In *In re Interest of R.G.*, the Supreme Court held that "the ex parte temporary detention order is nonfinal and thus not appealable, but that the later detention order is a final, appealable order." *Id.* at 415, 470 N.W.2d at 788. The order appealed from in the case at bar is neither the temporary detention order nor the "later" detention order. It was, however, entered immediately after a detention order that was appealable, and if the grandparents' visitation order is based upon any judicial process, that judicial process could only have

occurred at the time of the detention hearing which resulted in an appealable order.

As pointed out in *In re Interest of R.G.*, the finality of a final order in a juvenile matter is in part determined by whether a substantial right has been affected by the order. The court stated that "the question of whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed." *Id.*

The order appealed from purports to be a denial of a motion to intervene, but it grants significant relief to the would-be intervenor. It also affects the detention of the children during the detention period that could last until the adjudication hearing. The statute directs that the adjudication hearing shall be held as soon as possible, but in all cases within 6 months after the petition is filed. Neb. Rev. Stat. § 43-277 (Reissue 1993). The order states that the grandparents' visitation "shall in no way interfere with any case plan regarding the natural mother." Therefore, it appears that the judge expected the grandparents' visitation to last past any adjudication hearing. The order places no limits on the visitation, but allows the visitation to be determined by DSS. It therefore appears that the visitation might extend over a long period without a known limit. We therefore conclude that the provision of the order is of sufficient importance and may reasonably be expected to last a sufficiently long period of time that the order affects a substantial right of Jennifer, and hence, it is appealable.

## STANDARD OF REVIEW

An appeal to the Court of Appeals or the Supreme Court from a juvenile court is reviewed de novo on the record. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

## ANALYSIS

Jennifer correctly argues that her mother and stepfather do

not have visitation rights to her children under §§ 43-1801 to
43-1803. With respect to grandparents' visitation rights,
§ 43-1803 specifically provides for venue in the district court of
the county where the child resides or in the district court where
the dissolution of the parents' marriage is pending or was
dissolved. Thus, the juvenile court was not the proper venue
and could not have granted visitation under the afore-
mentioned statutes. Furthermore, no petition was filed, no
evidence was introduced, and no findings were made alleging or
proving the beneficial nature of the relationship of the
grandparents to the children as required by § 43-1802(2).

In *In re Interest of Ditter*, 212 Neb. 855, 326 N.W.2d 675
(1982), the Supreme Court rejected the notion that visitation
rights could be preserved in the grandparents of children when
the parental rights of the child's parents have been terminated.
In making that decision, the court noted that the common law
did not recognize visitation rights in grandparents and said:

> Even if one were to reject the common-law view . . . and
> accept the more modern view that under proper facts,
> where the best interests of the child demand it,
> grandparents may be entitled to seek rights of visitation,
> we would reach the same result in a case such as this.

*Id.* at 858-59, 326 N.W.2d at 677.

The Supreme Court has not determined whether the
juvenile court may grant visitation to the grandparents of
children who are subject to proceedings before it. In the instant
case, the issue of the grandparents' right to visit was not
litigated in the juvenile court, but merely ordered. Therefore,
this case lacks the factual record necessary to consider the
question, even if *In re Interest of Ditter* were to be extended to
allow the granting of visitation to grandparents in juvenile
cases. And, as the above quote indicates, any right the
grandparents might have to visitation while their grandchildren
are in the custody of DSS is subject to a showing that such
visitation is in the best interests of the children. The Legislature
essentially imposed that standard when it recognized limited
grandparents' visitation rights in § 43-1802. We can find no
indication that either the Legislature or the Supreme Court will
conclude that grandparents are entitled to visitation simply

because they are grandparents, without a showing that their visitation would be in the best interests of the children.

In the instant case, the grandmother filed a motion for intervention in which the alleged facts, if true, could support a finding that it was in the children's best interests to allow the grandparents visitation. However, this motion was dismissed without an evidentiary hearing, and the grandparents did not appeal or cross-appeal from that decision. Furthermore, the evidence contained in the bill of exceptions is totally devoid of any evidence bearing on whether visitation of the children by the grandparents was in the best interests of the children.

More fundamentally, the children's mother was given no notice of any hearing at which she might litigate this issue. The procedure adopted by the court effectively granted part of the grandmother's motion without giving the children's mother an opportunity for a hearing on the issue. " ' "[T]he relationship between parent and child is constitutionally protected." ' " *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 767, 408 N.W.2d 272, 277 (1987) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)). The proposition that a person's constitutionally protected right cannot be interfered with without an opportunity to be heard is well founded in the Due Process Clause in the Constitution. U.S. Const. amend. XIV, § 1.

The order of the juvenile court must be reversed and the cause remanded with directions to terminate the grandparents' visitation that was granted in the juvenile court's journal dated February 17, 1994. This order is without prejudice to a redetermination after an application, notice, and hearing.

REVERSED AND REMANDED WITH DIRECTIONS.