16 Neb. App. 210
IN RE INTEREST OF A.W. ET AL., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
DANIEL V., APPELLANT.
No. A-07-270.
Court of Appeals of Nebraska.
Filed November 27, 2007.
Courtney Klein-Faust and Ronald E. Temple, of Fitzgerald, Vetter & Temple, for appellant.
Gail Collins, Deputy Madison County Attorney, for appellee. David Uher, guardian ad litem.
INBODY, Chief Judge, and IRWIN and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Daniel V., natural father of D.V. and J.V., appeals from the order entered by the county court for Madison County, sitting as a juvenile court, approving the case plan and court report and overruling Daniel's objection to said report. Although we conclude that the order did affect a substantial right, we nevertheless affirm the order of the lower court.

BACKGROUND
Daniel and his wife, Shelly V., are the natural parents to D.V. (born February 3, 2003) and J.V. (born February 6, 2004), who are the children at issue in connection with this appeal. Shelly is also the natural mother of A.W. and R.W., who are not involved in the instant appeal. An order was entered on March 16, 2007, terminating Shelly's parental rights to all four children, which order was affirmed by this court in a memorandum opinion filed October 26, 2007, in case No. A-07-361.
The children were removed from the home of Daniel and Shelly on February 24, 2005, because drug paraphernalia and methamphetamine were found in the family home, in addition to the poor condition of the home. Following a no contest plea by the parents, all four children were adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004) on July 25, 2005. The children have been in the legal custody of the Department of Health and Human Services (DHHS) since their removal from the home and have been placed in foster care. At the October 31, 2005, disposition hearing, the case plan and court report prepared September 20, which had reunification as the permanency objective, was approved. Among other things, Daniel was ordered to refrain from using drugs, to submit to random drug testing, and to pursue intensive inpatient treatment. The visitation plan in this court report provided for visits two to four times per week, for 2 to 6 hours each visit.
A review hearing was held on May 23, 2006, at which time the April 21 case plan and court report was approved. The permanency objective at this time remained reunification; however, there was a concurrent plan of adoption. The report indicated that Daniel had entered a treatment program on November 7, 2005, but left the program shortly thereafter. The report further indicated that on March 3, 2006, Daniel pled guilty to felony drug possession and misdemeanor child abuse and that he was awaiting sentencing. Daniel entered an intensive inpatient program in Omaha on April 15. Daniel's visitation plan provided for at least one visit per month for 1 hour and provided for weekly contact following his release from treatment.
The next case plan and court report was prepared on December 19, 2006. This report indicated that Daniel had been sentenced on June 5 to 16 to 28 months' incarceration on the child abuse conviction and 1 year's incarceration on the drug possession conviction, to be served consecutively. The report stated that Daniel was expected to be released from incarceration in August or September 2007. The visitation plan stated that D.V. and J.V. were transported to the Omaha Correctional Center every other month for up to 2 hours. The permanency plan remained reunification with a concurrent plan of adoption.
On January 16, 2007, Daniel filed an "Objection to Case Plan," wherein he alleged that the plan was not an accurate reflection of the progress he had made and that the visitation plan for Daniel was not in the best interests of the children. Daniel asked that the case plan not be accepted or, in the alternative, that it be amended to reflect his progress and that he be given bimonthly visitation. The State filed a motion to terminate Daniel's parental rights on January 29.
A hearing was held on Daniel's objection to the case plan and court report on February 8 and 9, 2007. Kari Kraenow, a protection and safety worker with DHHS, testified that the children had been visiting Daniel every other month, which visits required a 4-hour automobile trip each way between the children's foster home in O'Neill and the correctional facility in Omaha. Three visits had taken place between the time of Daniel's incarceration and the hearing. The children generally left O'Neill about 9 a.m. and returned to O'Neill about 7:30 p.m. At the time of the hearing, D.V. had just turned 4 and J.V. had just turned 3. The visits were generally appropriate, with the children excited to see their father. However, the visits did not usually last 2 hours, because the children became restless after approximately 45 minutes. Kraenow testified that due to the rules of the correctional facility, there were not a lot of activities that the children and Daniel could participate in, other than reading books. Kraenow initially intended for visits to be once a month but decided after the first visit that it was not in the children's best interests, due to the facility rules which did not promote positive interaction between children and parents. Kraenow determined that visitation every other month was appropriate, and she testified that it would not be in the children's best interests to increase the frequency of visitation while Daniel was incarcerated.
Kraenow also testified regarding Daniel's drug treatment. She indicated that Daniel was placed at the treatment facility in Omaha in April 2006, but he did not actually begin the program until May 17, and that he left the program at the time he was sentenced. Kraenow did not have any current information about programs Daniel had been involved in since his incarceration, nor had she seen any of his recent drug test results.
Daniel testified that he had completed parenting classes, as well as phase I of a drug treatment program. He was also attending weekly Narcotics Anonymous and Alcoholics Anonymous meetings. He is currently involved in phase II of the drug treatment program, attending daily sessions. Daniel had plans to be finished with phase III of the program by September 2007. Daniel testified that he submits to regular, random drug tests which have all been negative and that he has not used drugs since he entered the Omaha treatment facility in May 2006. Daniel is also taking classes through the GED program. Daniel testified that his "jam," or release, date is January 2008.
At the conclusion of the hearing, the court overruled Daniel's objection to the case plan and court report, finding that Daniel failed to show by a preponderance of the evidence that the visitation plan was not in the children's best interests. The court adopted the case plan and court report. The court entered a written order on February 9, 2007, which reflected the above decision. The order also noted that the State withdrew its motion to terminate Daniel's parental rights. Daniel appeals from the February 9 order.

ASSIGNMENT OF ERROR
Daniel asserts that the trial court erred in accepting the case plan and court report over his objection, which report he argues limited his visitation with the children to once every 2 months and omitted information about his drug and alcohol treatment.

STANDARD OF REVIEW
When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decision made by the lower courts. In re Guardianship of Rebecca B. et al., 260 Neb. 922, 621 N.W.2d 289 (2000).
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. In re Interest of B.R. et al., 270 Neb. 685, 708 N.W.2d 586 (2005).

ANALYSIS

Jurisdiction.
Daniel appeals from the dispositional order of February 9, 2007, wherein the trial court overruled his objection and adopted the case plan and court report dated December 19, 2006. The State argues that this order was not a final, appealable order because it did not affect a substantial right of Daniel.
In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. In re Interest of Dakota L. et al., 14 Neb. App. 559, 712 N.W.2d 583 (2006). It is well settled that a judicial determination made following an adjudication in a special proceeding which affects the substantial right of parents to raise their children is a final, appealable order. In re Guardianship of Rebecca B. et al., supra; In re Interest of Clifford M. et al., 258 Neb. 800, 606 N.W.2d 743 (2000). However, in juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. In re Guardianship of Rebecca B. et al., supra. Accordingly, to determine whether the review order can be appealed in this case, it is necessary to consider the nature of the court's order on February 9, 2007, and what parental rights, if any, were affected by that order.
Daniel asserts that the case plan and court report that was adopted at the February 9, 2007, hearing changed his visitation with his children from once a month to once every other month, which limitation on visitation affected a substantial right. In reviewing the case plan and court reports in the record, Daniel's visitation started out with two to four visits per week, from 2 to 6 hours each visit; then was reduced to once a month; and finally, was reduced to once every other month. Thus, at least with respect to visitation, there was a change in the plan between the previous dispositional orders and the order entered on February 9.
This court has recognized that a no contact order or a no visitation order can significantly impact parental rights and that a no visitation order can affect a substantial right. See In re Interest of B.J.M. et al., 1 Neb. App. 851, 510 N.W.2d 418 (1993). We have also held that an order terminating visitation is a final order. In re Interest of Zachary L., 4 Neb. App. 324, 543 N.W.2d 211 (1996). While the order in question did not completely eliminate or terminate visitation, it did reduce Daniel's visitation in such a way that it significantly impacted his parental right.
The question of whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. In re Guardianship of Sophia M., 271 Neb. 133, 710 N.W.2d 312 (2006); In re Interest of Zachary W & Alyssa W., 3 Neb. App. 274, 526 N.W.2d 233 (1994). At the time the order in question was entered, February 9, 2007, Daniel was going to be incarcerated for nearly another year.
We conclude that the February 9, 2007, order is of sufficient importance and may reasonably be expected to last a sufficiently long period of time that the order affects a substantial right of Daniel, and hence, it is appealable.

Approval of Plan.
Daniel contends that the lower court erred in approving the case plan and court report over his objection, which report he argues limited his visitation with the children to once every 2 months and omitted information about his drug and alcohol treatment. After reviewing the record de novo, we conclude that the juvenile court did not err in adopting DHHS' recommendation with regard to Daniel's visitation with the children.
While Neb. Rev. Stat. § 43-285 (Reissue 2004) grants a juvenile court discretionary power over a recommendation proposed by DHHS, it also grants preference in favor of such proposal. In order for a court to disapprove of a plan proposed by DHHS, a party must prove by a preponderance of the evidence that DHHS' plan is not in the child's best interests. In re Interest of Tabatha R., 255 Neb. 818, 587 N.W.2d 109 (1998). See § 43-285.
The evidence at the review hearing shows that Daniel's visitation was reduced because of his incarceration and the attendant circumstances of the incarceration, including the lengthy travel required of the children to visit Daniel at the correctional facility and the inability to have positive, meaningful interaction between Daniel and the children while at the facility. The Nebraska Supreme Court has recognized that a parent's incarceration is a factor to consider in determining whether or not a rehabilitation plan should be adopted for that parent. In re Interest of Tabatha R., supra.
We conclude that Daniel failed to establish that DHHS' proposal with respect to visitation was not in the children's best interests. Accordingly, we affirm the decision of the lower court adopting the case plan and court report and overruling Daniel's objection.
AFFIRMED.