directed courts to consider the context. It was not intended to exclude relevant statements where the declarant had no motive to lie. And this case illustrates that interpreting *Williamson* too broadly allows the State to manipulate which relevant evidence will come before the trier of fact.

Of course, under rule 804(2)(c), Weakly's statements must also be corroborated by circumstances indicating that they are trustworthy. But because the trial court did not rule on this issue, I would reverse, and remand for further proceedings.

———————————

In re Interest of Mya C. and Sunday C.,
children under 18 years of age.
State of Nebraska, appellee,
v. Nyamal M., appellant.
___ N.W.2d ___

Filed December 6, 2013.    No. S-12-811.

1. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
3. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings under Neb. Rev. Stat. § 25-1902 (Reissue 2008), and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.
4. **Juvenile Courts: Parent and Child.** Under Neb. Rev. Stat. § 43-288 (Reissue 2008), a juvenile court has discretion to require a parent, among other things, to comply with a rehabilitation plan that will correct the conditions that led to the adjudication and to adequately provide for his or her child's needs.
5. **Juvenile Courts: Parental Rights: Appeal and Error.** A juvenile court order imposing a rehabilitation plan affects a parent's substantial right in a special proceeding and is appealable.
6. **Juvenile Courts: Final Orders: Time: Appeal and Error.** A juvenile court order that merely extends the time that the requirements of a previous order are in effect does not affect a substantial right or extend the time in which a party may appeal the original order.
7. **Juvenile Courts: Parental Rights: Appeal and Error.** A juvenile court order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights. Such orders affect a parent's substantial right in a special proceeding and are appealable.

Petition for further review from the Court of Appeals, Inbody, Chief Judge, and Irwin and Moore, Judges, on appeal thereto from the Separate Juvenile Court of Lancaster County, Reggie L. Ryder, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Matt Catlett for appellant.

Joe Kelly, Lancaster County Attorney, and Daniel J. Zieg, for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

### SUMMARY

A parent cannot appeal from a juvenile court's dispositional order that merely extends the time that the requirements of a previous order are in effect.[1] This appeal raises the jurisdictional question whether a juvenile court's order is final and appealable when it changes a condition for reunification in a parent's rehabilitation plan. While the appellant, Nyamal M., was a minor ward herself, the juvenile court required her to continue her high school education. At a later review hearing—after Nyamal had aged out of the juvenile court system, dropped out of high school, and obtained a job—the juvenile court changed the rehabilitation plan and required her to actively pursue a high school diploma or a diploma through the GED program.

The Nebraska Court of Appeals determined that this order was not final and appealable because it essentially continued the juvenile court's previous orders. The Court of Appeals characterized her appeal as an impermissible collateral attack on its earlier orders.[2]

---

[1] See, e.g., *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

[2] See *In re Interest of Mya C. & Sunday C.*, 20 Neb. App. 916, 835 N.W.2d 90 (2013).

We granted Nyamal's petition for further review from this decision. We conclude that the later order did not merely continue the terms of the previous rehabilitation plan. Instead, it imposed a materially different requirement for Nyamal's reunification with her children. We reverse the Court of Appeals' judgment and remand the cause with directions for the court to consider the merits of Nyamal's appeal.

## BACKGROUND

In July 2010, Nyamal, who is from Sudan, was an unmarried minor living in her mother's home with her daughters, Mya C. and Sunday C., who were ages 4 and 2. They were all three removed from the home, and Nyamal's daughters were adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) because of her neglect. During these proceedings, Nyamal lacked work authorization, although later court orders have required the Department of Health and Human Services to assist her with establishing her status as a resident alien.

### Juvenile Court's Dispositional and Review Proceedings

The disposition order required Nyamal to cooperate with family support services and therapy to learn to deal with stress and to parent her children appropriately. The disposition order also required Nyamal to "continue her education a[t] Lincoln High School" and "not switch her education plans without approval from the Department." Finally, the order required her to seek part-time employment to support her children.

In March 2011, the department placed Nyamal and her children in an apartment. The court's June review order continued the department's legal custody and placement with Nyamal. The court required Nyamal to "continue with her education at Bryan Community School." The record does not explain this change in schools. The other requirements from the disposition order were continued, including the requirement that Nyamal seek part-time employment.

The court's December 8, 2011, review order continued the same requirements that it had imposed in the June 2011 order.

In addition, the December order required the department to assist Nyamal with documenting her resident alien status. Later in December, after the court issued its order, Nyamal turned 19 and aged out of the juvenile court system.

In March 2012, the department placed the children in a foster home because of Nyamal's inappropriate physical discipline. The court allowed her supervised visitation. In March, Nyamal dropped out of high school. At a May hearing, she stated that she dropped out because she was stressed about losing her children and could not reach the caseworker. Before February, she was on track to graduate from high school in December 2012. In May, she began GED classes at a program offered by a youth services center. She had missed some visits with her children because of delays in obtaining someone to transport the children and supervise the visits or because of scheduling conflicts. The May review hearing was continued until July 31.

In mid-July 2012, Nyamal obtained a temporary full-time job that paid her $9.37 per hour and required her to work from 2 to 11:15 p.m. She informed her caseworker of her employment and asked for a change in her visitation times. She was inconsistent in her visits because of her work hours. She attended only one GED class in July and did not report her discontinuation to the caseworker. In July, an instructor with the GED program wrote the guardian ad litem that Nyamal had a long way to go to obtain a GED diploma because she had below-average reading, writing, and mathematics skills. In the guardian ad litem's July report, she recommended that the court require Nyamal to complete her education by obtaining a high school diploma or a diploma through the GED program. But in May, neither the caseworker nor the guardian ad litem made these recommendations in their reports, even though Nyamal had dropped out of high school in March.

At the July 2012 continued hearing, Nyamal stated that the company she worked for often hired on a temporary basis until the temporary employee demonstrated that he or she would show up to work every day for several months. Nyamal stated that she had wanted to get her GED diploma, but that she did not have time to do so while she was working

full time and that she was worried about getting her children back and providing for their needs. She stated that she could get her GED diploma later and that she would consider it in another month or two. Because both her daughters were starting school, Nyamal did not believe it was a good time for her to attend classes. The court asked her whether she recognized that it would be easier for her to attend GED classes while she did not have custody of her children and that it would be very difficult to accomplish that goal if she had custody. The court also asked the caseworker whether it had previously ordered Nyamal to further her education or obtain a GED diploma:

> [Court:] And I'm not sure that — do you know whether that's been ordered in this case? I mean she's ordered to further her education, obtain her G.E.D. [diploma]?

> [Caseworker:] I don't recall.

> Q Well let me ask — let me ask a different way. Do you believe that it's important for [Nyamal] in order to reunify herself with her children, that she get the G.E.D. [diploma] or a high school equivalency diploma?

> A I think if [Nyamal] chooses to get her G.E.D. [diploma], that would only benefit her in looking for employment. When she is able to have her girls returned to her care.

After closing arguments, the court stated the following from the bench:

> And I am gonna also order that [Nyamal] is to actively pursue either a G.E.D. [diploma] or a high school diploma. I do think it's highly relevant to the ability to provide for these children. The goal here in this case is reunification and you know, [Nyamal] does have a job which is good and maybe this will work out to be the one and only place that [Nyamal] will work. Maybe she'll work her way up from a temporary employee to a full-time and permanent employee and move and be able to stay with the company her whole life. But if not, then it's certainly important that she has some kind of a fall back plan and without a G.E.D. [diploma] or a high school diploma, even with those, employment is very difficult. But without them,

it's even more so and in the end that would make it more difficult for the — for the girls. So at this point and [sic] time, I am going to approve the recommendations with that change.

In its order, the court required Nyamal to "actively pursue a GED [diploma] or a high school diploma." It also required both Nyamal and the biological father to "provide a legal means of financial support for the minor children" and continued the requirement that the department assist Nyamal to obtain her immigration documentation.

## Court of Appeals' Decision

On appeal, Nyamal assigned that the juvenile court erred in its review hearing order, filed August 9, 2012, by requiring her to actively pursue a high school diploma or a GED diploma. She argued that the requirement was not reasonably related to correcting the conditions that caused the adjudication.

The State contended only that the August 2012 order did not affect a substantial right because it merely continued the court's previous orders. The Court of Appeals agreed. It stated that before she turned 19, Nyamal could have argued that requiring her to continue her high school education was unreasonable and had no connection to the goal of reunifying her with her children. Because she did not appeal from the orders and make those arguments, the Court of Appeals concluded that she had not presented a reason to "carve out an exception . . . to the rule prohibiting appeals from orders *which are a continuation of previous determinations of the court*"[3]:

> Although Nyamal's circumstances have arguably changed since the original dispositional order, the education provisions have continued and we find no justification or authority for creating an exception to the jurisdictional prohibition.
>
> Additionally, while the subsequent orders changed the location or method of obtaining such education, the orders are essentially the same; that is to say, Nyamal was

---

[3] *Id*. at 920-21, 835 N.W.2d at 94 (emphasis supplied).

required to work toward the equivalent of a high school education. . . . We conclude that the August 9, 2012, order is merely a continuation of the original December 10, 2010, dispositional order. Therefore, any appeal to the court's education requirement should have been made within the applicable period after the December 10 order. The current appeal is an impermissible collateral attack on a prior judgment.[4]

## ASSIGNMENT OF ERROR

Nyamal assigns that the Court of Appeals erred in dismissing her appeal for lack of jurisdiction.

## STANDARD OF REVIEW

[1,2] We independently review questions of law decided by a lower court.[5] A jurisdictional issue that does not involve a factual dispute presents a question of law.[6]

## ANALYSIS

Nyamal contends that the Court of Appeals' jurisdictional analysis was incorrect because the August 2012 order did not merely change the location or method of obtaining an education. She argues that the disposition and early review orders, which required her only to continue with her education, are not the same as the August 2012 order, which demands that she pursue a high school diploma or a GED diploma. She contends that these orders did not impose equivalent requirements. And she argues that the Court of Appeals' reasoning will invite abuse by juvenile courts because it permits them to impose significant new requirements in a rehabilitation plan if the permanency goal is the same. And she argues that the Court of Appeals erroneously downplayed the significance of her aging out of the juvenile system as an intervening circumstance that broke the chain of continuity in these orders.

---

[4] *Id*. at 921, 835 N.W.2d at 94-95.

[5] See *Guinn v. Murray, ante* p. 584, 837 N.W.2d 805 (2013).

[6] *In re Interest of Edward B*., 285 Neb. 556, 827 N.W.2d 805 (2013).

The State argues that the juvenile court's earlier orders, which required Nyamal to continue her high school education, were equivalent to its August 2012 order that she pursue a high school diploma or a GED diploma.

[3-6] Juvenile court proceedings are special proceedings under Neb. Rev. Stat. § 25-1902 (Reissue 2008), and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.[7] Under Neb. Rev. Stat. § 43-288 (Reissue 2008), a juvenile court has discretion to require a parent, among other things, to comply with a rehabilitation plan that will correct the conditions that led to the adjudication and to adequately provide for his or her child's needs.[8] A juvenile court order imposing a rehabilitation plan affects a parent's substantial right in a special proceeding and is appealable.[9] But a juvenile court order that merely extends the time that the requirements of a previous order are in effect does not affect a substantial right or extend the time in which a party may appeal the original order.[10]

We have held that a review order does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order.[11] Conversely, the Court of Appeals has held that a juvenile court's order following a review or permanency plan hearing affects a parent's substantial right when it adopts a case plan that (1) reduces or eliminates visitation for a significant period[12] or (2) changes the permanency objective to guardianship and adoption with

---

[7] See, *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012); *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009).

[8] See *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2 445 (2013).

[9] *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003).

[10] See *In re Guardianship of Rebecca B. et al., supra* note 1.

[11] See, *id.*; *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999); *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

[12] See, *In re Interest of A.W. et al.*, 16 Neb. App. 210, 742 N.W.2d 250 (2007), citing *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993).

the State providing no further services for family reunification or preservation.[13]

Here, the August 2012 order did not change visitation rights or the permanency goal. But we disagree with the Court of Appeals that the case plan adopted in the juvenile court's August order was equivalent to the court's earlier case plans. The juvenile court explicitly stated from the bench that it was adopting the department's recommendations *with the change* in the rehabilitation plan. And that change was not insignificant.

While Nyamal was a minor ward in high school herself, the court's requirement that she continue her high school education did not require her to obtain a diploma as a condition of reunification with her children. In contrast, under the court's August 2012 order, Nyamal must actively pursue a high school diploma or a GED diploma or she will be out of compliance with the rehabilitation plan. So contrary to the Court of Appeals' reasoning, even if she had appealed from the original order, an appellate court would not have considered whether she was required to obtain a high school diploma or its equivalent.

Moreover, before August 2012, the court had consistently required Nyamal to seek part-time employment. But in the August 2012 order, it required her to "provide a *legal means* of financial support for the minor children." (Emphasis supplied.) The new order essentially meant that Nyamal's employment did not comply with her rehabilitation plan because she had not yet obtained authorization to legally work in the United States.

This change was consistent with the court's statement at trial that her education was more important than her job and shows that the change in the education requirement was not the same as its previous requirement. In the August 2012 order, the court clearly intended that Nyamal obtain a high school diploma or a GED diploma as a condition of reunification and that she not work because working was interfering with that goal.

---

[13] See *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013).

The State conceded at oral argument that the August 2012 order effectively required Nyamal to obtain a high school diploma or a GED diploma. And a significant difference exists between requiring a minor ward to continue in school and requiring an adult with below-average academic skills to obtain a diploma or its equivalent as a condition of reunification. If Nyamal could not timely comply with this requirement, her children could potentially be in an out-of-home placement long enough to trigger a termination proceeding.[14] We conclude that the new requirement was a material change in the rehabilitation plan.

[7] Courts give substantial constitutional protection to a parent's right to care for and maintain custody of his or her child.[15] And an order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights. We therefore hold that such orders affect a parent's substantial right in a special proceeding and are appealable.

## CONCLUSION

We conclude that the Court of Appeals erred in holding that the juvenile court's order did not affect Nyamal's substantial right to raise her children. Because the juvenile court's order imposed a new requirement that she obtain a high school diploma or a GED diploma as a condition of reunification with her children, it did not merely continue the terms for reunification under its previous orders. We therefore reverse the Court of Appeals' judgment and remand the cause with directions for the court to consider the merits of Nyamal's appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., participating on briefs.

---

[14] See Neb. Rev. Stat. § 43-292(7) (Cum. Supp. 2012).

[15] See *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).